(697 P.2d 879)

No. 56,285

STATE OF KANSAS, *Appellee,* v. LAFE F. MYERS a/k/a MONTE MYERS, *Appellant.*

Opinion filed April 4, 1985.

*W. Irving Shaw,* of Krueger & Shaw, of Emporia, for appellant.

*Rodney H. Symmonds,* county attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before BRISCOE, P.J., REES and MEYER, JJ.

BRISCOE, J.: Defendant Myers appeals criminal convictions and sentencing on drug charges.

On July 15, 1982, a search warrant was issued for a residence owned and occupied by the defendant and his wife in Emporia, Kansas. The search warrant was issued for amphetamines, items for the sale or use of amphetamines, and items which would identify the occupants of the residence. The warrant was executed the next day, July 16. The defendant's residence was searched and various items of personal property were seized. As items of property were collected, Officer Paul Yonally, using a tape recorder, described the items and the locations from which they were taken within the residence. As a result of the search, numerous charges were filed against the defendant.

The defendant filed a motion to suppress all of the seized items, alleging they were beyond the scope of the search warrant. A suppression hearing was held, during which the defendant moved to strike the testimony of Yonally because the evidence inventory tape had been erased. The district court denied the motion to suppress and the motion to strike Yonally's testimony.

With the defendant reserving the right to appeal on issues of law, the case was tried to the court upon the parties' stipulation to the facts. The district court found the defendant guilty of possession of a hallucinogenic drug (K.S.A. 1984 Supp. 65-4127b[a][3]) and possession of a depressant (65-4127b[a][1]). Both counts were held to be class D felonies because of defendant's prior conviction under 65-4127b. K.S.A. 1984 Supp. 65-4127b(a).

The defendant was sentenced to two concurrent terms of three to ten years. Subsequent motions to modify the sentence were denied. Defendant raises three issues on appeal:

(1) Whether the district court erroneously refused to strike the testimony of Yonally when his tape-recorded inventory statement had been erased;

(2) Whether the evidence seized by the police officers in the course of their search of defendant's home was inadmissible; and

(3) Whether there was sufficient evidence of a prior conviction under 65-4127b for the district court to sentence the defendant for a class D felony.

Prior to oral argument, we questioned the timeliness of defendant's appeal and ordered the parties to address at argument our jurisdiction to hear the appeal. We turn first to an examina-

tion of the jurisdictional issue raised on our own motion. *State v. Bickford,* 234 Kan. 507, 509, 672 P.2d 607 (1983).

Several dates are relevant to this issue. The defendant was orally sentenced from the bench on June 1, 1983. He then filed a motion to modify his sentence, which was denied. On September 21, 1983, the defendant filed a second motion to modify his sentence, 112 days after sentencing. This second motion was orally denied on October 5, 1983, 126 days after sentencing, with the journal entry memorializing the denial filed on October 20, 1983, 141 days after sentencing. Defendant filed his notice of appeal on October 26, 1983, 147 days after sentencing.

The time within which a criminal defendant may appeal is fixed by statute. K.S.A. 22-3608(1) provides:

"If sentence is imposed, the defendant may appeal from the judgment of the district court not later than ten days after the expiration of the district court's power to modify the sentence."

K.S.A. 1984 Supp. 21-4603(3) provides:

"Any time within 120 days after a sentence is imposed . . . the court may modify such sentence . . . by directing that a less severe penalty be imposed in lieu of that originally adjudged within statutory limits. If an appeal is taken and determined adversely to the defendant, such sentence may be modified within 120 days after the receipt by the clerk of the district court of the mandate from the supreme court or court of appeals."

The two statutes, read together, appear to give a criminal defendant 130 days after sentencing in which to take a direct appeal. Kansas cases have so held. See, *e.g., State v. Moses,* 227 Kan. 400, 404, 607 P.2d 477 (1980); *State v. Smith,* 223 Kan. 47, 47, 574 P.2d 161 (1977).

The jurisdictional issue raised in this appeal is whether judicial interpretation of K.S.A. 1984 Supp. 21-4603(3) extending the time in which a district court can rule on a sentence modification motion also extends the appeal time under K.S.A. 22-3608(1). See *State ex rel. Owens v. Hodge,* 230 Kan. 804, 641 P.2d 399 (1982).

General principles of appellate jurisdiction are well established and often stated:

"The right of appeal is entirely a statutory right; no appellate review is required by the federal constitution [citation omitted] or the Kansas Constitution. [Citations omitted.] It is the established rule in this state that this court has no jurisdiction to entertain an appeal by defendant in a criminal case, unless he takes his appeal within the time prescribed by the statutes providing for such an

appeal. [Citations omitted.] The supreme court has only such appellate jurisdiction as is conferred by statute pursuant to Article 3, Section 3, of the Kansas Constitution, and when the record discloses lack of jurisdiction, it is the duty of the supreme court to dismiss the appeal. [Citations omitted.]" *State v. Smith,* 223 Kan. at 48.

See also *State v. Moses,* 227 Kan. at 404; *City of Kansas City v. Sherman,* 9 Kan. App. 2d 757, 758, 687 P.2d 1383 (1984).

The jurisdictional issue we address is one of first impression and arises as a corollary to the decision in *State ex rel. Owens v. Hodge,* 230 Kan. 804. In *Hodge,* the petitioner district attorney sought a mandamus against the respondent district judge which would require the judge to withdraw an order placing a convicted criminal defendant on probation. The issue posed was "whether a district court in Kansas loses jurisdiction to act upon a motion for reduction of a sentence or for probation under K.S.A. 21-4603(3) . . . at the expiration of the applicable 120-day period, even though a motion for reduction of sentence or for probation was timely filed by the defendant within that time period." 230 Kan. at 804. Relying on federal precedent and enunciating Kansas Criminal Code and Kansas Code of Criminal Procedure philosophy, *Hodge* rejected literal interpretation of K.S.A. 21-4603(3) and held that "a district court does not lose jurisdiction to act upon a motion for reduction of sentence or for probation at the expiration of the 120-day period after sentence was imposed, where a timely motion has been filed by defendant within that time period and where the district judge reasonably needs the time to consider and act upon the motion." 230 Kan. at 814.

Here, the defendant timely filed his second motion to modify sentence by filing it 112 days after the oral pronouncement of his sentence, which is within the 120-day period after sentence was imposed. K.S.A. 1984 Supp. 21-4603(3). Although the district court ruled on the motion to modify 126 days after the pronouncement of sentence, the court still had jurisdiction to make that ruling under *State ex rel. Owens v. Hodge,* 230 Kan. at 814.

The time limitation on a criminal defendant's right to a direct appeal is statutorily linked to the time in which a district court may modify his sentence. K.S.A. 22-3608(1) and K.S.A. 1984 Supp. 21-4603(3). Under K.S.A. 22-3608 (1), the defendant has 10 days after the district court's decision on the motion to modify in which to perfect his appeal. The statute provides the defendant

may appeal "not later than ten days after the expiration of the district court's power to modify the sentence." Since the district court's power to modify is extended beyond the 120-day period under *Hodge*, the defendant would have 10 days from the date the district court ruled on the motion to modify to file his notice of appeal.

Although this procedure may result in the extension of the 130-day time limitation for the filing of a direct criminal appeal in certain cases, that extension is required under K.S.A. 22-3608(1) and K.S.A. 1984 Supp. 21-4603(3) when read with *Hodge*. This procedure also has the avoidance of concurrent jurisdiction to recommend it. In *State v. Dedman*, 230 Kan. 793, 796-97, 640 P.2d 1266 (1982), the court held the district court lacked jurisdiction to modify a sentence after the notice of appeal was filed, referring to the general rule that district court jurisdiction ends upon appellate docketing. This position was reaffirmed in *State v. Williams*, 235 Kan. 485, 495, 681 P.2d 660 (1984). Dedman is distinguishable from the case at bar in that defendant Dedman perfected his appeal, including an attack on his sentence, before filing a motion in the district court to modify his sentence. Nonetheless, we think it significant that, in dicta, the court stated a policy position that criminal actions be lodged in only one court at a time. 230 Kan. at 797. If a criminal defendant's appeal time were strictly limited to 130 days, regardless of a pending motion to modify sentence, defendant would have to file his direct appeal within 130 days on all issues except those pertaining to his sentence. Issues pertaining to his sentence could not be appealed until decided by the district court, and the appellate court would have no alternative but to stay the appeal until determination of the motion to modify. In effect, defendant's appeal would not move forward, and two courts would be involved in the case. The potential for drift in the system is enormous.

In the case at bar, the defendant's notice of appeal was filed six days after the journal entry denying the motion to modify, but 21 days after the court's oral denial. The crucial issue in this case then becomes whether the 10-day period of K.S.A. 22-3608(1) begins to run from the oral denial of the motion, or from the filing of the journal entry denying the motion. We conclude the 10-day period to file a notice of appeal must run from the filing of the journal entry deciding the motion, not from the oral ruling.

The rationale for running the 120-day appeal time from oral pronouncement of the sentence is unique to sentencing. See *State v. Moses,* 227 Kan. 400, 402, 607 P.2d 477 (1980), and cases cited therein. K.S.A. 1984 Supp. 22-3405(1) requires that the defendant be present when sentence is imposed. The defendant's presence at sentencing insures defendant's immediate notice of the sentence imposed and the opportunity to timely pursue an appeal. However, the presence of a defendant at the pronouncement of the decision on a post-sentencing motion is discretionary with the district court. *State v. Bryant,* 227 Kan. 385, 390, 607 P.2d 66 (1980).

As the defendant has no right to be present when the district court rules on his motion to modify, the court's power to modify a sentence upon a motion filed within the 120 days should end upon the *filing* of the order denying the motion. If the district court acts on a timely filed motion to modify sentence beyond the 120-day statutory limit, the criminal defendant has ten days from the filing of the journal entry deciding the motion in which to perfect his appeal. Here, defendant's notice of appeal was timely when filed six days after the journal entry denying the motion to modify.

Having determined jurisdiction, we turn to defendant's first issue. Defendant contends the district court erred in failing to strike Detective Yonally's testimony at the suppression hearing when his tape-recorded inventory of items seized had been erased prior to the hearing. As a result of this erasure, the State could not produce the tape pursuant to the defendant's request under K.S.A. 22-3213. Defendant also raised the discrepancy in the number of items on the two typed property returns as further support of his motion to strike. One return listed 74 items; the other, 75 items.

The district court should consider the following factors when ruling upon a motion to strike testimony for failure to comply with K.S.A. 22-3213:

"why the statement was not produced; if it was lost, the facts and circumstances surrounding the loss; the negligence or fault on the part of the state; the nature, relevance and importance of the statement; the risk of prejudice to the defendant; the essentiality of the testimony to the state; and the other evidence in the case." *State v. Wilkins,* 220 Kan. 735, 741, 556 P.2d 424 (1976).

Whether the testimony will be stricken is within the district court's discretion, subject to reversal on appeal only if no reasonable person would adopt the district court's view. *Wilkins*, 220 Kan. at 741-42.

In the case at bar there was no evidence or contention that Detective Yonally acted in bad faith. He erased the tape after he read and reviewed what he believed were accurate transcriptions of the tape. The detective explained the discrepancy in the number of items listed by testifying item number 75 was some residue he scraped from a scale seized in the search of defendant's residence. Item 75 was not on the original tape of the items seized, but was added upon Detective Yonally's request after the search. The record reveals the defendant thoroughly cross-examined Detective Yonally regarding this discrepancy.

The defendant has failed to show that he was prejudiced by the erasure of the tape. As in *State v. Eubanks*, 2 Kan.App.2d 262, 264, 577 P.2d 1208, *rev. denied* 225 Kan. 846 (1978), verbatim transcriptions were made of the tape, and the defendant was afforded complete access to the transcriptions. Defendant had the opportunity to cross-examine Detective Yonally regarding the tape and the transcripts, and also Officer Finger regarding the items seized at defendant's residence.

The district court did not abuse its discretion in refusing to strike the testimony of Detective Yonally.

Defendant next contends the evidence seized by police officers in the course of their search of defendant's home was inadmissible. Specifically, defendant alleges the police acted beyond the scope of the search warrant in violation of the Fourth Amendment's prohibition against unreasonable search and seizure, and that the search did not fall within the "plain view" exception to the warrant requirement as set out in *State v. Galloway*, 232 Kan. 87, 94, 652 P.2d 673 (1982).

Defendant's contention that the officers' search exceeded the scope of the search warrant is without merit. The search warrant authorized a search of defendant's house for amphetamines. One of the officers who conducted the search testified that amphetamines can be in powder, tablet or capsule form. The container search conducted here, which included search of Tylenol bottles and prescription bottles, was reasonable given the object searched for. As stated in *United States v. Ross*, 456 U.S. 798, 820-822, 72 L.Ed.2d 572, 102 S.Ct. 2157 (1982):

"A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. . . . When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home . . . must give way to the interest in the prompt and efficient completion of the task at hand."

In order to conduct a search for something which was as small in size as amphetamines, the officers acted reasonably in searching containers and small areas. Further, it appears logical that a search for amphetamines would include a search of pill bottles.

The defendant also contends that the seizure of items not listed on the search warrant was illegal. Defendant argues the search had become a "general search" resulting in the "wholesale collection of any and all medicines, tablets, capsules or other things located within the home." We find seizure of these additional items proper under the plain view exception to the Fourth Amendment.

The plain view exception is applicable where it is shown:

"1) The initial intrusion which afforded the authorities the plain view was lawful by virtue of a warrant (search or arrest), waiver or exigent circumstances; 2) the discovery of the evidence was inadvertent; and 3) the authorities immediately had reasonable or probable cause to believe the evidence observed in plain view was incriminating in nature." *State v. Galloway,* 232 Kan. 87, 94, 652 P.2d 673 (1982).

The defendant concedes the initial intrusion into the defendant's residence was lawful by virtue of a valid search warrant. The police officers testified the Tylenol and prescription bottles were of such a size that they could contain amphetamines. Detective Yonally testified the reason he opened a prescription bottle was because he was looking for amphetamines and/or any other controlled substance. As previously stated, a search for something the size of amphetamines would require the search of small containers. Here, the officers' discovery of other narcotics while embarked on a reasonable search for amphetamines was inadvertent, satisfying the second requirement of the plain view exception. *State v. Galloway,* 232 Kan. at 94.

A search of the Tylenol bottles and prescription bottles revealed pills and substances other than Tylenol. The officers testified as to the various shapes and forms amphetamines can have and that they believed it was possible the contents of the bottles could be amphetamines. These facts taken together would give authorities both reasonable and probable cause to believe the evidence observed in plain view was incriminating in nature. Therefore, the search satisfies all of the requirements of the plain view exception as set out in *State v. Galloway*, 232 Kan. at 94. The evidence seized by the police officers was clearly admissible.

The defendant contends there was insufficient evidence of a prior conviction under 65-4127b for the district court to sentence the defendant for a class D felony. K.S.A. 1984 Supp. 65-4127b(a) provides in pertinent part:

"Any person who violates this subsection shall be guilty of a class A misdemeanor, except that upon conviction for a second or subsequent offense, such person shall be guilty of a class D felony."

The parties stipulated to certain facts at a trial to the court. One of the facts offered by the State was that the defendant had previously been convicted of a violation of 65-4127b, making both of the offenses charged class D felonies. In the presence of the defendant, defense counsel objected to the introduction of evidence of the prior conviction because, although the conviction was under 65-4127b, it was for marijuana or THC and not diazepam or lysergic acid diethylamide. At sentencing, the defendant indicated he had received a copy of the presentence report and that he knew of no amendments or deletions which should be made to the report. Although not in the record on appeal, both parties acknowledge that the report indicated defendant had been previously convicted of possession of marijuana and possession of phenobarbital.

Evidence of prior convictions is not an element of the offense charged, but rather is pertinent only to sentence enhancement under K.S.A. 1984 Supp. 65-4127b and should be presented in the same manner as such evidence is presented under the habitual criminal act, K.S.A. 1984 Supp. 21-4504. *State v. Loudermilk*, 221 Kan. 157, 161, 557 P.2d 1229 (1976) (analyzing K.S.A. 65-4127a). K.S.A. 1984 Supp. 21-4504(e) provides that "[a] judgment may be rendered pursuant to this section only after the

court finds from competent evidence the fact of former convictions for felony . . . ." Where a defendant admits prior convictions of felonies, competent evidence of prior convictions has been provided by the admission. See *State v. Hazelwood,* 209 Kan. 649, 658, 498 P.2d 607 (1972); *Tuscano v. State,* 206 Kan. 260, 264-65, 478 P.2d 213 (1970); *Darling v. Hoffman,* 180 Kan. 137, 138, 299 P.2d 594 (1956).

In the case at bar, the defendant's attorney admitted the defendant's prior convictions in the presence of the defendant at the time of the stipulations and at the time of sentencing. These statements provided evidence of prior convictions which was sufficient for the court to enhance the penalty under K.S.A. 1984 Supp. 65-4127b to class D felonies. *State v. Ralph,* 194 Kan. 356, 360-61, 399 P.2d 548 (1965); *Reffitt v. Edmondson,* 177 Kan. 83, 85, 276 P.2d 341 (1954).

Affirmed.

REES, J.: I dissent.

Art. 3, Sec. 3 of the Kansas Constitution directs that "[t]he supreme court shall have . . . such appellate jurisdiction as may be provided by law." Pursuant to this section, appellate jurisdiction is granted by statute in those criminal cases where the defendant appeals within the restricted time there stated. Specifically, K.S.A. 22-3608(1) provides:

"If sentence is imposed, the defendant may appeal from the judgment of the district court not later than ten days after the expiration of the district court's power to modify the sentence."

(For a judgment to be appealable under K.S.A. 22-3608[1], there must be both conviction and either sentence imposition or suspension of sentence imposition. *Cf. City of Topeka v. Martin,* 3 Kan. App. 2d 105, 590 P.2d 106 [1979]. An appeal from such a final judgment will be that to which I refer when I use the term "direct appeal" herein.)

K.S.A. 1984 Supp. 21-4603(3) provides:

"Any time within 120 days after a sentence is imposed . . . the court may modify such sentence . . . by directing that a less severe penalty be imposed in lieu of that originally adjudged within statutory limits. If an appeal is taken and determined adversely to the defendant, such sentence may be modified within 120 days after the receipt by the clerk of the district court of the mandate from the supreme court or court of appeals."

As the majority says, the two statutes, read together, give a criminal defendant 130 days after sentencing in which to take a direct appeal. See, *e.g.*, *State v. Smith*, 223 Kan. 47, 47, 574 P.2d 161 (1977). And "Notice of appeal *must* be filed . . . within 130 days from the date on which sentence is imposed." (Emphasis added.) *State v. Moses*, 227 Kan. 400, 404, 607 P.2d 477 (1980).

Whether the ten-day requirement prescribed by K.S.A. 22-3608(1) was met in this case where the notice of appeal was filed more than ten days after oral denial of the sentence modification motion but less than ten days after filing of the journal entry reporting that decision is a question that need be reached only if the filing of the notice of appeal was timely under the "130 days after sentencing" rule. Thus, the threshold question in this case is a question of law: Does the *State ex rel. Owens v. Hodge*, 230 Kan. 804, 814, 641 P.2d 399 (1982), judicial extension of the K.S.A. 1984 Supp. 21-4603(3) prescribed time within which a district court can rule on a sentence modification motion also extend the combined K.S.A. 22-3608(1) and 21-4603(3) appeal time? I conclude that it does not.

The majority and I agree that the following summarizes general principles of appellate jurisdiction:

"The right of appeal is entirely a statutory right; no appellate review is required by the federal constitution [citation omitted] or the Kansas Constitution. [Citations omitted.] It is the established rule in this state that [the appellate] court has no jurisdiction to entertain an appeal by [the] defendant in a criminal case, unless he takes his appeal *within the time prescribed by the statutes* providing for such an appeal. [Citations omitted.] The [appellate] court *has only such appellate jurisdiction as is conferred by statute pursuant to Article 3, Section 3, of the Kansas Constitution,* and when the record discloses lack of jurisdiction, it is the duty of the [appellate] court to dismiss the appeal. [Citations omitted.]" (Emphasis added.) *State v. Smith*, 223 Kan. at 48.

In *Hodge*, a mandamus action filed as an original action in the Supreme Court, the petitioning district attorney asked that the respondent district judge be ordered to withdraw and strike an order placing a convicted criminal defendant on probation. No appeal had been taken or attempted in the criminal prosecution. Appeal time was not a subject at issue in *Hodge; Hodge* does not address or mention it. The majority correctly states that, "Relying on federal precedent and enunciating Kansas Criminal Code and Kansas Code of Criminal Procedure philosophy,

*Hodge* . . . held that 'a district court does not lose jurisdiction to act upon a motion for reduction of sentence or for probation at the expiration of the 120-day period after sentence was imposed, where a timely motion has been filed by defendant within that time period and where the district judge reasonably needs the time to consider and act upon the motion.' " 230 Kan. at 814.

*Hodge* is in the books, but there is some concern among the federal circuits regarding the continuing validity of the federal precedent on which *Hodge* relies. Some circuits doubt the validity of extension of jurisdiction beyond the 120-day period but have not gone so far as to rule there can be no extension. See, *e.g., United States v. Kajevic,* 711 F.2d 767, 769-71 (7th Cir. 1983), *cert. denied* 464 U.S. 1047 (1984); *United States v. Pollack,* 655 F.2d 243, 245-46 (D.C. Cir. 1980). Other circuits have reaffirmed their position that the district court can retain jurisdiction beyond 120 days. See, *e.g., Diggs v. United States,* 740 F.2d 239, 245-47 (3rd Cir. 1984); *United States v. Krohn,* 700 F.2d 1033, 1035-38 (5th Cir. 1983). See generally West Key Number Criminal Law 996(2). Contrary state precedent was acknowledged in *Hodge,* 230 Kan. at 811.

Does K.S.A. 22-3608(1), when read in light of *Hodge,* give the criminal defendant until ten days after the district court's decision on a timely filed sentence modification motion in which to appeal in cases such as this where the decision on the motion is made more than 120 days after sentencing? The statute says the defendant may appeal "not later than ten days after the expiration of the district court's power to modify the sentence." *Hodge* judicially extends the K.S.A. 1984 Supp. 21-4603(3) statutory time in which the district court may exercise its power to modify the sentence where there is a timely filed sentence modification motion. But to read K.S.A. 22-3608(1) as the majority does causes me considerable concern. The effect of such a reading is judicial extension of appeal time beyond that statutorily prescribed and it makes uncertain what is otherwise certain, that is, a 130-days after sentencing limitation for criminal appeals. Such judicial legislating and resultant uncertainty does not faze the majority.

Federal precedent provides little guidance in the case before us because federal practice contemplates two appeals. Under Fed. R. App. Proc. 4(b), a criminal defendant's notice of appeal

must be filed "within 10 days after the entry of the judgment or order appealed from." The motion for sentence reduction under Fed. R. Crim. Proc. 35(b) is a *separate* proceeding in the original criminal prosecution also appealable under 4(b). *United States v. Guiterrez,* 556 F.2d 1217 (5th Cir. 1977). On the one hand, an order denying relief under a motion to reduce sentence may be appealed beyond the 120 days (Fed. R. Crim. Proc. 35[b]) plus ten days (Fed. R. App. Proc. 4[b]) contemplated by rule. On the other hand, the time for direct appeal remains constant and pendency of a motion for sentence reduction does not jeopardize the defendant's direct appeal. Under the federal system, the consequence for a criminal defendant whose motion is held for an unreasonable time by the district judge is parole commission assumption of jurisdiction over his sentence. *Diggs v. United States,* 740 F.2d at 246-47.

Kansas procedure is significantly different. The time limitation on a criminal defendant's right to a direct appeal is linked to the time in which a district court may modify his sentence, as the majority says. K.S.A. 22-3608(1) and K.S.A. 1984 Supp. 21-4603(3). By using *Hodge* to extend appeal time the majority judicially expands appellate jurisdiction. Here the extension is from 130 days to at least 136 days. In other cases it will be to a date perhaps months beyond the legislative mandate. In such a course of action there not only is possible violation of the Kansas Constitution, Art. 3, Sec. 3, but also, at the least, the door is opened to practical unfairness to the criminal defendant. Where a defendant who has a timely filed sentence modification motion pending files his notice of appeal more than 130 days after sentencing, his direct appeal is jeopardized by the possibility of a later determination that the district judge delayed his ruling more than ten days beyond expiration of the *Hodge* "reasonable length of time." It must follow as a matter of logic that in the event of such a later determination, the defendant would then be deprived of review of his direct appeal. I need not posit other worst-case hypotheticals. Despite *Hodge* and possible alternative readings of the appeal statute, K.S.A. 22-3608(1), I am convinced that the time for a direct appeal in a criminal case is limited to 130 days from sentence imposition.

The majority comments that avoidance of concurrent jurisdiction recommends the result they reach. I question whether it is

necessarily better that concurrent jurisdiction be avoided. As will be discussed below, the position of the State in *State v. Williams*, 235 Kan. 485, 681 P.2d 660 (1984), indicates to me that I am not alone. Also with respect to sentence modification, I see no materially less likelihood of "drift in the system" than now exists in the common practice of remand for the purpose of allowing the filing and resolution of post-appeal sentence modification motions. This observation in turn warrants discussion of two Kansas cases bearing on appellate and concurrent jurisdiction.

In *State v. Dedman*, 230 Kan. 793, 640 P.2d 1266 (1982) (decided the same day as *Hodge)*, it was held that the trial court lacked jurisdiction to modify a sentence after a direct appeal had been taken. I am unsettled by the degree of significance the majority gives to a judicial administration policy position expressed in *Dedman* dicta. *Dedman* filed a notice of appeal seventy days after his sentencing. The appeal was docketed seven days later. Eighty days after sentencing, ten days after filing of the notice of appeal and three days after the appeal was docketed, he filed a sentence modification motion. The affirmed ruling of the trial court was that it was without jurisdiction to entertain the motion because the motion was filed after the notice of appeal had been filed and the appeal had been docketed. In the *Dedman* opinion, this appears:

"*[W]hen an appeal is docketed the trial court's jurisdiction ends* and the sentence may then be modified only after the mandate . . . is returned or by motion to remand temporarily for modification of the sentence." (Emphasis added.) (p. 796-97.)

Despite what may be said was meant, to me those words say in plain English that once a convicted defendant has taken a direct appeal, the trial court is divested of all jurisdiction in that criminal proceeding until the appellate court's mandate is received by the trial court with the sole exception being those instances where temporary remand is ordered by the appellate court in response to a motion for remand filed with the appellate court by the State or the defendant. As I will later demonstrate, the office of the district attorney for the Eighteenth Judicial District, which represented the petitioner in *Hodge* and the State in *Dedman,* and the attorney general apparently read *Dedman* the same way.

After *Dedman*, there is *State v. Williams*, 235 Kan. 485. In that case, the defendant filed a notice of appeal three days after sentencing. After the filing of his notice of appeal, the defendant filed a sentence modification motion. His appeal was permitted to be subsequently docketed out of time. Of importance is the fact that the sentence modification motion was filed after the notice of appeal was filed, before the appeal was docketed, and 122 days after sentencing. On appeal, the defendant contended that the trial court erroneously ruled it was without jurisdiction to entertain the sentence modification motion. He argued that according to the *Dedman* syllabus, the Supreme Court had held trial court jurisdiction was lost upon docketing of the appeal. The Supreme Court's decision was that it "adhered" to *Dedman* and the court said in effect that when it spoke of docketing an appeal in the *Dedman* syllabus, it meant the filing of a notice of appeal. 235 Kan. at 495. No reference is made to Williams' tardy filing of his sentence modification motion as a possible proper ground for the trial court's decision. Because Williams' sentence modification motion was filed 122 days after his sentencing, it was not timely filed. That alone disabled the trial court from acting on the motion.

Worthy of note is that part of the State's brief in *Williams* disclosing that the district attorney for the Eighteenth Judicial District and the attorney general read *Dedman* as I do. In that brief, they say:

"This issue opens up a Pandora's Box of possibilities depending upon the court's ruling. If the trial court loses jurisdiction to modify sentence upon the filing of a Notice of Appeal after conviction, can the defendant preclude or stall his sentencing by filing a premature notice of appeal? If he is on probation while his appeal is pending, is the court prevented from revoking his probation upon the defendant's failure to obey its conditions? If a defendant abandons his appeal after it has been filed, but more than 120 days from sentencing has passed, does he also lose the statutory right to request a modification of sentence because under K.S.A. 21-4603(3) the appellate court will not send a mandate to the district court clerk? Does the district court retain the power to modify or revoke an appeal bond if the defendant commits a second crime while his first conviction is on appeal? In the present case as the defendant failed to file a timely motion to modify within 120 days of sentencing, and the district court has lost jurisdiction to modify the sentence . . . will the district court regain jurisdiction under the second sentence of K.S.A. 21-4603(3) when this appellate action is completed and the mandate is returned? These are . . . problems which have in many cases confronted the local district courts since the *Dedman* decision was handed down.

". . . The _Dedman_ ruling has added . . . confusion in appeal bond motions, motions for a new trial based on newly discovered evidence, motions affecting changes in the appointment of appellate counsel, and other matters which need to be presented to a district court for a factual determination despite the pendency of a direct appeal.

"[T]he appellee's major concern [is] not . . . the court's ruling on the _Dedman_ issues as it affects [Williams], but how the court's interpretation or modification of _Dedman_ may affect other matters . . . _needing simultaneous jurisdiction in district and appellate courts._" (Emphasis added.)

This strikes me as fair and pertinent comment.

Summarizing, I find these five principles pronounced in our case law:

1. "Jurisdiction to entertain an appeal is conferred by _statute_ . . . ." (Emphasis added.) _State v. Moses,_ 227 Kan. at 404.
2. "The filing of a timely notice of appeal is jurisdictional." _State v. Moses,_ 227 Kan. at 404.
3. "Notice of appeal _must_ be filed in a criminal case within 130 days from the date on which sentence is imposed . . . ." (Emphasis added.) _State v. Moses,_ 227 Kan. at 404.
4. "Upon the filing of the notice of appeal, the trial court loses its jurisdiction to hear _any_ motions to modify the sentence." (Emphasis added.) _State v. Williams,_ 235 Kan. at 495.
5. "A district court does not lose jurisdiction to act upon a [sentence modification] motion . . . at the expiration of the 120-day period after sentence was imposed, where a timely motion has been filed by defendant within that time period and where the district judge reasonably needs the time to consider and act upon the motion." _State ex rel. Owens v. Hodge,_ 230 Kan. at 814.

I am convinced that the first three of these principles must be held to be primary with the fourth incidental and the fifth subordinate thereto.

I conclude that in a criminal case invocation of appellate jurisdiction requires that the notice of appeal be filed within 130 days from the date of sentence imposition. That conclusion is statutorily mandated. I need not and do not decide whether defendant Myers' notice of appeal was filed within the ten-day prescription of K.S.A. 22-3608(1). I need not and do not reach the merits of the issues defendant Myers has asked that we review. It is my view that in appealed criminal cases the existence of concurrent jurisdiction in the trial court to resolve pending timely filed sentence modification motions and other incidental and ancillary postconviction motions and applications follows the statutorily stated legislative will. Delineation of such con-

current jurisdiction of the trial court is for another day and in appellate proceedings arising out of facts other than those now before us. I am troubled by the *Dedman* dicta stating a policy position that criminal actions be lodged in only one court at a time. 230 Kan. at 797. I agree with this position as a matter of judicial administration policy but I do not find it to be the statement of a rule of law and literal adherence to such a policy results in procedural and jurisdictional problems that are very real to the defendant, the State and the trial courts. At least limited concurrent jurisdiction in the trial court more closely accords with statutorily stated legislative will.

Where appeals are involved, confusion and uncertainty have been the ripple effect of *Hodge, Dedman* and *Williams.* Instead of alleviating that confusion and uncertainty, the majority's decision adds to it. Such confusion and uncertainty is the too frequent result of selective use of not directly related or analogous judicial statements and holdings as legal reasoning to support the result desired in a single case presented for review.

I note the recently filed opinion of our Supreme Court in *State v. Dubish*, 236 Kan. 848, 696 P.2d 969 (1985), an opinion authored by Justice Lockett, who was the *Williams* trial judge. *Dubish* says in part that where a motion for probation is filed by the defendant while his direct appeal is pending, the trial court *has* "jurisdiction to grant or enter any order with respect to" that motion. 236 Kan. at 855. This strikes me as contrary to the statement in *Williams* that "[t]he court's rationale in *Dedman* supports the argument that the trial court *loses jurisdiction over the case* with the filing of the notice of appeal." (Emphasis added.) 235 Kan. at 495. I leave to the contemplation of others whether that "holding" in *Dubish* is a statement of obiter dictum under the facts of *Dubish* and its two other holdings that the sentencing "judge does not have the right to grant probation for . . . one offense and impose imprisonment for other convictions arising out of the same transaction" and that the "sentencing judge has no jurisdiction to manipulate the eligibility date for release of a person sentenced to incarceration by granting probation on certain convictions and incarceration on others." 236 Kan. at 855.

Implementation of judicial administrative policy and "drift in the system" avoidance should not be accomplished by judicially

legislating. Statutory change is for the legislature, not the judiciary.

Defendant Myers' appeal should be dismissed. His notice of appeal was not timely filed.