No. 69,367

STATE OF KANSAS, *Appellee*, v. CHEUN-PHON JI, *Appellant.*
(872 P.2d 748)

Opinion filed April 15, 1994.

*Cortland E. Berry*, of Cortland E. Berry Legal Clinic, of Reading, was on the brief for appellant.

*Rodney H. Symmonds*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

*Jean K. Gilles Phillips*, assistant appellate defender, *Hazel Haupt*, assistant appellate defender, *Rick Kittel*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, were on the brief for *amicus curiae* Kansas Appellate Defender's Office.

*Per Curiam*: Subsequent to this court affirming his conviction and the sentence imposed in *State v. Ji*, 251 Kan. 3, 832 P.2d 1176 (1992), the defendant, Cheun-Phon Ji, filed a motion to modify sentence. The district court refused to modify the sentence. The defendant appealed. After the defendant filed his notice of appeal, this court issued an order to show cause why the defendant's appeal should not be dismissed as being filed out of time. The State responded that Ji's notice of appeal was timely filed. No response was filed by the defendant. This court retained the appeal and directed the parties to address the jurisdictional issue in their briefs. The defendant's counsel did not brief the issue but the State did. The Appellate Defender's request to brief the jurisdictional question as *amicus curiae* was granted. Three issues are present in this appeal: (1) Was the notice of appeal timely filed; (2) did the judge abuse his discretion in refusing to order a psychological evaluation prior to the hearing on the defendant's motion to modify his sentence; and (3) did the judge abuse his discretion in refusing to grant the defendant's request to appear at the hearing?

## I. JURISDICTION

The right of appeal is entirely a statutory right; no appellate review is required by the United States Constitution, *Griffin v. Illinois*, 351 U.S. 12, 18, 100 L. Ed. 891, 76 S. Ct. 585 (1955), or the Kansas Constitution, *State v. Smith*, 223 Kan. 47, 48, 574 P.2d 161 (1977). It is the established rule in this state that this court has no jurisdiction to entertain an appeal by a defendant in a criminal case unless the defendant appeals within the time prescribed by the statutes providing for such an appeal. See *State*

*v. Thompson*, 221 Kan. 165, Syl. ¶ 1, 558 P.2d 1079 (1976); *State v. Shores*, 185 Kan. 586, 588, 345 P.2d 686 (1959); *State v. Sims*, 184 Kan. 587, 588, 337 P.2d 704 (1959). The Supreme Court has only such appellate jurisdiction as is conferred by statute pursuant to Article 3, Section 3, of the Kansas Constitution, and when the record discloses a lack of jurisdiction, it is the duty of the Supreme Court to dismiss the appeal. *State v. Thompson*, 221 Kan. at 167; *State v. Mitchell*, 210 Kan. 470, 471, 502 P.2d 850 (1972); *State v. Shehi*, 185 Kan. 551, Syl. ¶ 1, 345 P.2d 684 (1959).

The mandate of this court's decision as to Ji's direct appeal was filed in the district court on July 15, 1992. Ji filed his motion to modify his sentence on September 30, 1992, 77 days after the mandate. Ji had complied with K.S.A. 1992 Supp. 21-4603(4) by filing his request for modification of his sentence within 120 days of the filing of the mandate. The sentencing judge heard the motion to modify on November 30, 1992, 138 days after the mandate was filed. At the conclusion of the hearing, he denied Ji's request to modify his sentence. The journal entry denying the motion to modify was filed December 16, 1992, 154 days after the filing of the mandate. Ji filed his notice of appeal on December 30, 1992, 168 days after the filing of the mandate, 30 days after the oral denial of the motion to modify, and 14 days after the filing of the journal entry, or 8 days when weekends and holidays are excluded. The question is: Did Ji file his notice of appeal of the judge's refusal to modify his sentence within the 10-day period as required by K.S.A. 1992 Supp. 22-3608(1)?

K.S.A. 1992 Supp. 22-3608(1) required Ji to file his notice of appeal within 10 days of the expiration of the district court's power to modify his sentence. K.S.A. 1992 Supp. 21-4603(4) empowered the district court to modify a sentence within 120 days of the receipt of a mandate following an appeal taken in which the decision was adverse to the defendant. Reading 22-3608(1) and 21-4603(4) together provides a criminal defendant a maximum of 130 days after sentencing, or the filing of a mandate following an appeal, to file a notice of appeal regarding issues raised in the motion to modify. See *State v. Moses*, 227 Kan. 400, 404, 607 P.2d 477 (1980). Three exceptions to the statutory period

in which to file an appeal are stated in *Schroeder v. Urban*, 242 Kan. 710, Syl., 750 P.2d 405 (1988); *State ex rel. Owens v. Hodge*, 230 Kan. 804, 814, 641 P.2d 399 (1982); and *State v. Myers*, 10 Kan. App. 2d 266, Syl. ¶ 3, 697 P.2d 879 (1985).

The first possible exception we discuss is the "unique circumstances" doctrine recognized in *Schroeder*. In *Schroeder*, the district judge entered judgment against the Urbans on February 23, 1987. After the attorney who represented the Urbans at trial notified them of the judgment, he declined to represent them on appeal. On March 23, 1987, 28 days after the entry of judgment, the district judge granted the Urbans an additional 30 days to file their appeal. The ruling was made during a conference call between the judge and counsel for both parties. The order extending time was filed the same day. At that time, the Urbans were snowbound in their rural home and had been unable to secure counsel to take their appeal. Within the 30-day extension granted by the judge, the Urbans secured new counsel. On April 22, 1987, the Urbans filed their notice of appeal. The Court of Appeals dismissed the appeal for lack of jurisdiction. This court granted review of the jurisdictional issue.

The *Schroeder* court determined that in the interest of justice, an appeal which is otherwise untimely may be maintained in unique circumstances if (1) the appellant reasonably and in good faith relies upon judicial action seemingly extending the appeal period; (2) the court order purporting to extend the appeal time was for no more than 30 days and was made and entered prior to the expiration of the official appeal period; and (3) the appellant files a notice of appeal within the period apparently judicially extended. 242 Kan. at 710.

The 10-day limit in 22-3608(1) in which Ji could file his notice of appeal before the expiration of the district court's power to modify his sentence was not extended by the judge. Without an extension of the 10 days to file the appeal by the judge, the "unique circumstances" doctrine does not apply to Ji's appeal.

The second exception is noted in *Owens*, 230 Kan. 804, which was an original proceeding in mandamus brought by the district attorney against the district judge. In *Owens*, the district attorney

requested an order directing the district judge to withdraw in that criminal case and rescind the prior order placing a defendant on probation. The basic question raised by the district attorney was whether a district judge lost jurisdiction to act upon a motion for reduction of a sentence or to grant probation under K.S.A. 21-4603(3) (now 21-4603[4]) at the expiration of the applicable 120-day period, even though a motion for reduction of sentence or for probation was timely filed within that time period by the defendant. The *Owens* court found, under the provisions of K.S.A. 21-4603(3), that where a motion to modify a sentence is filed by a defendant within the statutory time period and the district judge reasonably needs time beyond the statutory period to consider and act upon the motion, the district court does not lose jurisdiction to act upon a motion for reduction of sentence or for probation after expiration of the 120-day period. 230 Kan. at 813. Under this exception, the district court retained jurisdiction to rule on Ji's motion to modify the sentence even though 120 days from the filing of the mandate had expired.

Here, Ji filed his motion to modify his sentence within the 120-day period to modify a sentence. The judge heard the motion to modify 138 days after the mandate had been issued. The *Owens* rationale extended the 120-day period to file and hear Ji's motion to modify his sentence. *Owens* does not apply to the subsequent 10-day period set by 22-3608(1) to file an appeal for a refusal to modify the sentence.

The last exception is found in *Myers*, 10 Kan. App. 2d 266. In *Myers*, the defendant's sentencing occurred on June 1, 1983. On September 21, 1983, within the required 130 days, Myers filed a motion to modify his sentence. The motion was orally denied by the district judge on October 5, 1983, 126 days after sentencing. The journal entry was filed October 20, 1983, 141 days after sentencing. Myers' notice of appeal was filed October 26, 1983, 147 days after sentencing. If weekends are excluded in computing the filing deadline, the notice of appeal was filed 21 days after the oral denial and 6 days after the journal entry was filed.

The *Myers* court pointed out that the time within which a criminal defendant may appeal is fixed by K.S.A. 22-3608(1) and

K.S.A. 21-4603(3). It observed that when the two statutes are read together, the statutes provide a criminal defendant 130 days after sentencing in which to file an appeal. 10 Kan. App. 2d at 270. See *State v. Moses*, 227 Kan. 400, 404, 607 P.2d 477 (1980). The *Myers* court noted that the defendant's notice of appeal was filed 6 days after the journal entry denying the motion to modify, but 21 days after the court's oral denial. It pointed out that the critical issue was whether the 10-day period of 22-3608(1) began to run from the judge's oral denial of the motion or from the filing of the journal entry denying the motion. It concluded that the 10-day period to file a notice of appeal of the motion to modify a sentence must run from the filing of the journal entry deciding the motion, not from the judge's oral ruling. 10 Kan. App. 2d at 270.

The *Myers* court commented that the rationale for commencing the 130-day appeal time from the oral pronouncement of the sentence was unique to sentencing statutes. It observed that K.S.A. 22-3405(1) required that the defendant be present at the arraignment and at every stage of the trial, including when sentence is imposed. It noted that the defendant's presence at sentencing insures the defendant's immediate notice of the sentence imposed and the opportunity to timely pursue an appeal of an adverse ruling. The *Myers* court pointed out that the presence of a defendant at the hearing on a post-sentencing motion is discretionary with the sentencing judge. See *State v. Bryant*, 227 Kan. 385, 390, 607 P.2d 66 (1980). The court determined because the defendant has no right to be present at the hearing where the district judge usually rules on the defendant's motion to modify the sentence, the court's power to modify a sentence upon a motion filed within the 120 days should end upon the filing of the order denying the motion. It concluded that if the district judge acts on a timely filed motion to modify sentence beyond the 120-day statutory time limitation, the criminal defendant has 10 days from the filing of the journal entry deciding the motion in which to perfect the appeal. It found that the defendant's notice of appeal was timely when filed six days after the journal entry denying the motion to modify had been filed with the court. 10 Kan. App. 2d at 271.

Judge Rees dissented, stating that to read 22-3608(1) as the majority did caused him considerable concern. He opined the effect of such a reading was a judicial extension of appeal time beyond that statutorily prescribed and it made uncertain what was otherwise certain, that is, a 130 days after sentencing limitation for criminal appeals. 10 Kan. App. 2d at 277.

The decision in *Myers* that the 10-day period to file a notice of appeal runs from the filing of the journal entry deciding a motion for sentence modification has previously been referred to by this court, but without either approval or disapproval, in *State v. Saft*, 244 Kan. 517, 520, 769 P.2d 675 (1989). In *Saft*, the issue was whether the district court had jurisdiction to modify a sentence after a motion to modify has been filed within 120 days of a modification of a sentence, but outside of 120 days from the imposition of the original sentence. 244 Kan. at 518. The *Saft* court noted that both *Myers* and *Owens* recognized "the defendant must file within the 120 days running from the original imposition of sentence." 244 Kan. at 520. *Myers* has also been cited for the proposition that a defendant has no right to be present at a ruling on a motion to modify. *State v. Pierce*, 246 Kan. 183, 187, 787 P.2d 1189 (1990). See *State v. Wills*, 244 Kan. 62, 64-65, 765 P.2d 1114 (1988).

The question raised is not whether the court's jurisdiction to hear the motion was extended, but when, under the circumstances, did time for Ji to file the appeal of the judge's refusal to modify the sentence expire: 10 days after the judge orally denied the motion to modify the sentence or 10 days after the filing of the journal entry? The State acknowledges that if *Myers* and K.S.A. 1993 Supp. 60-206(a), of the Code of Civil Procedure, which requires Saturdays, Sundays, and legal holidays be excluded from the computation of a filing deadline when the period of time is less than 11 days, are applied, Ji's notice of appeal was timely filed. Ji's notice of appeal was filed 14 days after the filing of the journal entry. By excluding Saturdays, Sundays, and Christmas, the notice of appeal was docketed 8 days after the journal entry denying the motion to modify was filed.

The State contends, however, that even if 60-206(a) applies, the legislative intent inherent in 22-3608 was to place a time limit

on a defendant's right to appeal from the sentence of the trial court. It argues that the *Myers* decision undermines 21-4603 and 22-3608 because the time in which a defendant must file an appeal is no longer governed by these statutes, which provide a specific time period in which the appeal must be filed. The State points out that under *Myers* the filing of a journal entry which may occur a considerable period of time after the statutory limitation has expired controls the time limitation for filing an appeal from the refusal to modify a sentence.

The State then concludes its argument by acknowledging that it is important for all litigants to be able to accurately determine the date by which an appeal must be filed. The State notes that the decision in *Myers* may be contrary to the express language of 22-3608 and 21-4603, but it has not proven to be unworkable for litigants. Accordingly, the State requests that the court determine whether the interests of justice are best served by the application of *Myers* or by strict adherence to the time limitations of 22-3608 and 21-4603, which under certain circumstances place an undue burden on the criminal defendant.

The *amicus curiae* notes K.S.A. 22-3606 states that unless otherwise provided by either statute or Supreme Court rule, the rules of civil appellate procedure apply to criminal appeals. The *amicus curiae* contends that because no other statute or Supreme Court rule addresses this question, the time for action in any criminal appeal which is required to be completed within less than 11 days should be calculated under the civil procedure statutes, which exclude counting weekends or holidays. The *amicus curiae* asserts this rule is "particularly important" when applied to the new sentencing guidelines which require notices of appeal to be filed within 10 days of the judgment of the district court. K.S.A. 1993 Supp. 22-3608(c).

The *amicus curiae* urges that this court should adopt the *Myers* rule and extend it to not just matters concerning motions to modify but to all situations where a defendant is not entitled to be present, *e.g.*, motions for new trial and for acquittal, and conversion hearings under the new sentencing guidelines. The crux of the *amicus curiae's* concern is that if the defendant is not pres-

ent at a hearing, "it cannot be assumed that the defendant was immediately informed of the trial court's decision." The *amicus curiae* asserts it would be "undue hardship" for a defendant to have to file an appeal within 10 days of the court's ruling when the defendant was in custody and not present at the hearing. The *amicus curiae* also notes that Supreme Court Rule 2.04 (1993 Kan. Ct. R. Annot. 9) requires a journal entry be filed prior to docketing an appeal, and therefore it argues an appeal filed within 10 days of a ruling cannot go forward until the journal entry is filed.

*Application of* State v. Myers *and K.S.A. 1993 Supp. 60-206(a)*

All rules relating to appellate practice shall be applicable to both civil and criminal appeals and govern procedure in both the Court of Appeals and the Supreme Court unless otherwise indicated. Supreme Court Rule 1.01(e) (1993 Kan. Ct. R. Annot. 1). K.S.A. 1993 Supp. 60-206 sets the provision that governs the computation and extension of time for civil procedure. K.S.A 1993 Supp. 60-206(a) states:

"[I]n computing any period of time prescribed or allowed by this chapter; by the local rules of any district court; by order of court; or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed is to be included, unless it is a Saturday, Sunday or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday or a legal holiday. When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation. A half holiday shall be considered as other days and not as a holiday. 'Legal holiday' includes any day designated as a holiday by the congress of the United States, or by the legislature of this state. When an act is to be performed within any prescribed time under any law of this state, or any rule or regulation lawfully promulgated thereunder, and the method for computing such time is not otherwise specifically provided, the method prescribed [in 60-206] shall apply."

The rule announced in *Myers* has been applied for over nine years. See *e.g., State v. Irvin,* 16 Kan. App. 2d 214, 216, 821 P.2d 1019 (1991). Although this court is not bound by the doctrine of stare decisis to follow a lower court's decision, the principles behind that doctrine militate against rejecting, without good cause,

that long-standing rule. "Stare decisis operates to promote system-wide stability and continuity by ensuring the survival of decisions that have been previously approved by a court." *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, 356, 789 P.2d 541 (1990), *overruled on other grounds Bair v. Peck*, 248 Kan. 824, 844, 811 P.2d 1176 (1991).

Second, there is no indication that the legislature has attempted to repudiate the *Myers* decision at any time during the nine years since the decision was published. K.S.A. 21-4603 has been amended almost every year since the filing of the *Myers* opinion. See *State v. Reed*, 253 Kan. 154, 156, 853 P.2d 50 (1993) ("K.S.A. 21-4603 has been tinkered with in each recent legislative session.") K.S.A. 22-3608 was amended the year following that decision. L. 1986, ch. 123, § 23. Although the *Myers* rule does not appear to be within the plain language of the statute, the legislature, by not rejecting the *Myers* rule, has apparently accepted, *sub silentio*, the Court of Appeals' interpretation of the statutes involved. *Cf. Early Detection Center, Inc. v. Wilson*, 248 Kan. 869, 874, 811 P.2d 860 (1991) (legislature's failure to define or broaden meaning of term "person" in subsequent legislation makes prior judicial construction of the term part of the statute).

Third, the *Myers* rule offers a bright line to measure the timeliness of jurisdictional matters not subject to the facts of each case. Sometimes the defendant appears at the hearing, sometimes not. Defendants do not have a right to either have a hearing on a motion to modify, or be at the hearing if one is held. See *State v. Pierce*, 246 Kan. at 186-87; *State v. Jennings*, 240 Kan. 377, Syl. ¶ 1, 729 P.2d 454 (1986).

In felony cases, the defendant must be present in person at the arraignment and at every stage of the trial including the impaneling of the jury, the return of the verdict, and the imposition of sentence. K.S.A. 22-3405(1). A record of the judgment rendered or the sentence imposed must be made upon the journal of the court, and the judge must personally examine and sign the journal entry. K.S.A. 22-3426. The journalized entry is a record of the sentence imposed, but the actual sentencing occurs when the defendant appears in open court and the judge orally states the terms of the sentence.

The defendant's right to be present does not extend to post-conviction hearings. In *State v. Bryant*, 227 Kan. at 391-92, it was determined a defendant convicted of a crime is not entitled, as a matter of right under 22-3405, to be present at a hearing on a motion for a new trial filed after the imposition of sentence. The *Bryant* court stated that the presence of the defendant at the hearing on the motion for a new trial was a matter resting within the sound discretion of the district judge. Whether a defendant is entitled to a hearing on a 21-4603 motion to modify a sentence is discretionary with the trial court based upon the record before the court at the time. *State v. Jennings*, 240 Kan. at 379. An additional variable is that the judge does not necessarily announce the decision at the hearing. The judge may take the matter under advisement and at a later date file a written order determining the issue. A journal entry is always filed, although sometimes the journal entry is not filed with the clerk of the court for an extended period of time.

In *State v. Nelson*, 208 Kan. 404, 496 P.2d 498 (1972), the issue was whether the time period for use of the mail under 60-206(e), of the Code of Civil Procedure, applied to appellate criminal practice. The district court in *Nelson* had recognized that an existing rule of appellate practice incorporated part of the Code of Civil Procedure. Applying the doctrine of *expressio unius est exclusio alterius*, the district court found all other portions of the code were inapplicable. The Supreme Court noted that a complete answer could possibly be found in 60-206. Subsection (a) of 60-206 dealt generally with the computation of time and the effect of Saturdays, Sundays, and holidays in computing the time. The *Nelson* court noted the statute stated that "[w]hen an act is to be performed within any prescribed time under any law of this state, or any rule or regulation lawfully promulgated thereunder, and the method for computing such time is not otherwise specifically provided, the method prescribed [in 60-206 applied]." The *Nelson* court asserted from this language alone it could be argued all the relevant portions of 60-206 are applicable to criminal appellate practice.

The *Nelson* court observed that apart from the literal language of 60-206, its applicability would have a salutary purpose and ef-

fect, for several reasons. First, in dealing with matters of time computation, it renders certain what would otherwise be debatable; second, it makes our practice comport with that in the district court, with which most attorneys are presumably familiar; and, third, it allows a modicum of additional and often necessary time to act where the document triggering the action is brought through the mail. While in some cases three days may be more than ample, the *Nelson* court took judicial notice that such period will in many instances be a wholly inadequate allowance for a piece of mail, posted late in the day, to reach its destination. It observed that counsel faced with a deadline should not be unnecessarily penalized by that delay. It then concluded that 60-206 should be and was applicable in the situation involved in *Nelson* and in other situations where its application would not contravene some express provision of the Supreme Court's rules. The *Nelson* court concluded that it was regrettable such applicability may have heretofore been unclear, but the purpose of the order was to remedy that situation.

We agree that application of the rationale in *Myers* and 60-206 to appellate criminal practice where the defendant is not required by law to be present at the hearing has a salutary purpose and effect for several reasons. First, in dealing with matters of time computation, it renders certain what would otherwise be debatable; second, it makes our practice comport with that in the district court, with which most attorneys are presumably familiar; and, third, it allows a modicum of additional and often necessary time to act where the document triggering the action is brought through the mail. Under these circumstances, Ji's appeal of the district court's failure to modify his sentence was timely filed.

## II. REFUSING TO ORDER A PSYCHOLOGICAL EVALUATION

The facts underlying Ji's conviction and sentencing are set out in *Ji*, 251 Kan. 3. Briefly stated, Ji entered a church in Emporia and opened fire with a 9mm semi-automatic handgun, wounding four people, missing two others, and killing one. He was convicted on one count of first-degree murder and six counts of attempted first-degree murder. He was sentenced to consecutive terms of

life for the murder and 10 years to life on each of the attempted murder counts. Ji appealed the conviction and the sentence imposed. Ji's conviction and the sentence imposed were affirmed. After the mandate was filed on July 15, 1992, Ji filed a motion to modify his sentence and to allow him to appear at the modification hearing. Ji also requested that the district judge order a psychological evaluation be completed by the Topeka Correctional Facility (TCF) prior to the modification hearing.

A Department of Corrections (DOC) report from March 1990, filed with the district court prior to the modification hearing, indicated Ji had been placed in administrative segregation in 1990 because he had told the press the DOC would be unable to hold him. Also filed was a letter from Ji's parents asking, due to their advanced age and health problems, that Ji's sentence be reduced and that Ji be deported to his homeland to serve his sentence there for "humanitarian considerations."

At the hearing on the motion to modify his sentence, Ji's counsel requested that Ji attend so the court could observe the effect of the two years of incarceration on Ji. His counsel also noted Ji had never had a psychological examination. A fax transmittal from the TCF had been filed in the district court, which stated "subject apparently declined evaluation," which appears to refer to a statement signed by Ji in March 1990 declining evaluation. Ji's counsel informed the judge that in addition to not having a psychological evaluation, Ji had refused to allow his counsel to obtain prison records of Ji's conduct as a prisoner for use at the hearing.

The State first addressed the request to allow Ji to attend the hearing, claiming that because of Ji's past conduct, his appearance at the hearing was "nothing more than a waste of time." The State then addressed Ji's motion to modify the sentence, arguing that due to the nature of the crime, Ji's sentence should not be modified and he should remain incarcerated. Ji's counsel responded by claiming that the judge should consider that if Ji were to be released from custody, Ji would immediately be deported.

The district judge noted that he had reviewed K.S.A. 21-4601, -4603 and -4606. The judge commented that "[n]othing that [Ji's] counsel ha[d] argued indicate[d] that Mr. Ji's attitude in helping

towards [the sentencing] proceedings has changed." He opined any attempt to order a psychological evaluation "would be doomed to failure" and observed there was no additional information before him that would affect any sentencing decision. The judge felt Ji's presence at the hearing would not be beneficial, stating:

"There's no reason advanced that has reason to believe he has changed the attitudes that led to that incident. Just generally reviewing 21-4606, as I did at the time of sentencing, while he did not have a prior history of criminal activity, he certainly did intend that much more harm than was caused to be caused. He did cause the most severe damage to a human that he could. He intended to cause such serious harm. There was absolutely no provocation. The only grounds tending to excuse or justify his conduct were his mental delusions, which were not sufficient to establish a defense. But there's nothing to indicate that those mental attitudes or delusions, however you characterize them, have changed, and to release him now, the only possible thing that could be said good about that, would be that he would be deported. But to the extent that we talk about placing such a person in another society would seem to me to be a cruel and harmful thing for this society to do. I do not believe that's an appropriate disposition. And the last thing on 21-4606 in this type of case, there's no way that the Defendant can compensate Mr. DeWeese, the main victim of his criminal conduct. So, with those things in mind, and giving the continuing attitude of the Defendant as expressed through his counsel, I see that there is no reason to continue this hearing for his presence. I see no reason for psychological evaluations."

The district judge denied Ji's motion to appear at the hearing, the request to order a psychological evaluation at the TCF, and his request for modification of sentence. Ji appeals those rulings.

Ji begins his argument by asserting that the constitutional guarantees of equal protection apply to all persons, including illegal aliens, citing *State v. Barraza-Flores*, 16 Kan. App. 2d 15, 21, 819 P.2d 128 (1991), which found that an illegal alien is constitutionally entitled to protection offered by K.S.A. 1990 Supp. 21-4606a—presumptive sentence of probation. Ji argues that, as in *Barraza-Flores* where the defendant had been denied equal protection due to his citizenship status, he is being denied equal protection due to his mental condition. Ji states the only evidence supporting a conclusion that an order for a psychological evaluation would be doomed to failure was Ji's counsel's comment that

Ji refused to release his DOC records. Ji then asserts "[t]he sentencing judge was merely clutching at straws, using anything he could salvage out of what counsel said to deny Ji any possible chance at modification of his sentence."

Ji also argues the judge had no discretion to deny his request for an evaluation based on a two-year-old refusal to submit to an evaluation. Ji then states, "All that can be said about [his] refusal to sign a release for his institutional records is that he had his reasons." Ji contends there is a sufficient basis in the record to believe the judge's motivation in denying the evaluation request was that the judge was afraid the TCF would recommend a reduction in sentence or placement in a state psychiatric hospital. The State counters that in light of Ji's refusal to release the institutional records, it is possible that Ji would again refuse to submit to a psychological evaluation. The State concludes that there was no abuse of the judge's discretion in denying the request for an evaluation.

In *State v. Tillman*, 18 Kan. App. 2d 556, 858 P.2d 1219 (1993), the defendant was sentenced to the custody of the Secretary of Corrections, but before he could be taken to the State Reception and Diagnostic Center (SRDC), he was transferred to the custody of Missouri law enforcement officials and he was never evaluated at SRDC. The district court denied Tillman's subsequent motion to modify without the benefit of any evaluation by SRDC. The Court of Appeals could find no exception to the statutory requirement that every male offender receive an evaluation at SRDC, and there was nothing in the record to show Tillman had waived the evaluation. The Court of Appeals found it was error to deny the motion to modify without first having obtained an evaluation by SRDC. 18 Kan. App. 2d at 559. We note that Tillman never was given an opportunity to be evaluated after sentencing. Ji, on the other hand, was given an opportunity and refused to be evaluated.

There was no statutory requirement that Ji be given a second opportunity to be evaluated. Any decision as to a second request for an evaluation would be within the discretion of the judge. The test then is whether any reasonable person would have done what

the court did. *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 (1973). Ji's refusal to authorize release of his institutional records to his counsel supports the court's opinion that ordering a psychological evaluation would be futile. The court's refusal to order an evaluation was reasonable, and there was no abuse of discretion.

## III. REFUSING TO RETURN DEFENDANT FOR HEARING AND TO MODIFY SENTENCE

Ji recognizes the decision to return a defendant for hearing on a motion to modify is discretionary. See *Jennings*, 240 Kan. at 379. Ji contends no reasonable judge would rule on a motion to modify without either a TCF report or the presence of the defendant. Because no TCF report was available, Ji argues the denial of his request to be present at the hearing on the motion to modify was an abuse of discretion. Ji then again asserts the motivation behind the judge's decision was to keep Ji in prison and states, "The basis for refusing to return Ji was as hollow as a rotten tree."

A defendant's right to be present does not extend to post-conviction hearings. The presence of the defendant at the hearing on the motion to modify a sentence was a matter resting within the sound discretion of the district judge. Whether a defendant is entitled to be present at the hearing on a K.S.A. 1992 Supp. 21-4603(4) motion to modify a sentence is discretionary with the trial court based upon the record before the court at the time. *Jennings*, 240 Kan. at 379.

Ji argues it was an abuse of discretion to not modify his sentence because the crimes he was charged with and convicted of were multiplicitous. He states "four of the six people Ji supposedly attempted to murder were sitting in the church pews as were a hundred others and either saw the gun or heard the shots and ducked as did a hundred others. *It was just bad luck that these four were hit in the spray of the church by [his] bullets*." He contends the sentencing judge compounded the problem by running the sentences on these alleged multiplicitous convictions consecutively.

Ji claims there were grounds to excuse his conduct, *i.e.*, mental illness, and that he is being warehoused instead of being treated. He ends by stating:

"Unfortunately, [he] has not been treated by any court as an individual, but as a dreaded disease. Perhaps, he symbolizes the fruits of white racism. If so, no prison bars will keep this disease from spreading. The cure for [his] mental illness and, indeed, that of all American minorities is in the hands and hearts of White America."

The State argues there was no abuse of discretion in denying the motion for Ji to be present at the hearing and to modify his sentence because the two items presented at the hearing, the administrative segregation report and the letter from Ji's parents, "provide little support for [Ji's] argument for modification of sentence." There was no other information available to the court that it did not have at the time of the initial sentencing. This court previously found no abuse of discretion in the original sentencing. 251 Kan. at 41.

Under the circumstances in this case, the denial of the motion to have Ji present at the hearing and to modify the sentence was not an abuse of discretion.

Affirmed.