## THE STATE OF KANSAS v. JOSEPH CRILLY.

### No. 13,970. ( 77 Pac. 701.)

#### SYLLABUS BY THE COURT.

1. CRIMINAL PROCEDURE—*Presumption that Indictment was Returned in Open Court.* Where an indictment recites that it is presented by the grand jury, and it is properly signed by the prosecuting attorney, indorsed "a true bill" by the foreman, and filed by the clerk, it will be presumed, in the absence of a showing to the contrary, that it was duly returned in open court, notwithstanding no entry of the fact was made upon the minutes or journal of the court.

2. —— *Assistant Attorney-general is Authorized to Sign Indictment.* An assistant attorney-general, appointed under the provisions of section 2476 of the General Statutes of 1901, has authority to sign an indictment charging an unlawful sale of intoxicating liquor, and such signature will be as effective as that of the county attorney.

3. —— *Denial of Change of Venue Upheld.* The denial of a motion for a change of venue will not be held erroneous merely because the judge before the trial, in addressing the defendant and others charged with the same offense, warned them that in the event of their conviction he would take measures to prevent the evasion of the effect of a sentence, and in doing so used language indicating a belief in their guilt.

4. —— *Failure to Have Bailiff Sworn Not a Ground for New Trial.* A new trial will not be granted in a criminal action on account of the failure to have the bailiff sworn before his taking charge of the jury, where it appears that the defendant's attorney was cognizant of the omission and made no objection at the time, and that the bailiff properly performed the duties that would have been imposed by the statutory oath.

5. TERMS OF COURT—*Adjournment in Cherokee District Approved.* Where the statute provides that the district court of a county shall hold terms at different places within the county and that cases shall be tried at the places where they are respectively begun, an adjournment of the regular term of court at one place may be had to a day later than the commencement of a regular term of court at the other.

Appeal from Cherokee district court; W. B. GLASSE, judge. Opinion filed July 7, 1904. Affirmed.

*C. C. Coleman*, attorney-general, and *C. D. Ashley*, for The State.

*C. A. McNeill*, and *Jes. F. Wolfe*, for appellant.

The opinion of the court was delivered by

MASON, J. : Joseph Crilly appeals from a conviction in the district court of Cherokee county upon an indictment charging violations of the prohibitory liquor law.   The facts, so far as need be stated, appear in connection with the discussion of the several assignments of error.

It is contended by appellant that there is nothing in the record showing that the indictment was returned by the grand jury in open court, and that the judgment should be reversed on this account.   Such an omission has often been held fatal to the prosecution (10 Encyc. Pl. & Pr. 410), but it is said that "an indictment properly indorsed 'A true bill' and filed by the clerk sufficiently appears to have been returned into court by the grand jury" (id. 411, note 2).   Here the transcript does not show that any entry was made upon the minutes or journal of the court of the fact of the return of the indictment, but does include a copy of the indictment showing that it was indorsed by the foreman "A true bill," and by the clerk, "Presented in presence of grand jury, and filed this 13 day of Oct., 1903."   Within the authority and reason of the cases cited in the note referred to, we think the record affords sufficient evidence of the proper return of the indictment.

"The indictment itself being a part of the record proper and always on file, certainly when it is authenticated, as in this case, by the genuine signatures and indorsements of the prosecuting attorney, foreman of the grand jury, and the circuit clerk, there can be no question in our opinion but that the *prima facie* pre-

sumption is that it was lodged in that court in the manner and by the means prescribed by law." (*State v. Lord*, 118 Mo. 1, 23 S. W. 764.)

"The objection that the recital in the indictment, that 'the jurors, upon their oath, present,' etc., does not sufficiently show that it was presented by the jury in open court, cannot be sustained. The presumption is that it was properly presented, as it is indorsed as a true bill and signed by the foreman." (*State v. Weaver*, 104 N. C. 758, 10 S. E. 486.)

"As it appears that an indictment against defendant was found November 1, and this indictment appears to have been filed on that day, unless the ordinary presumption in favor of the proceedings of courts is inapplicable here, it would be presumed that it was duly presented; and we see no reason why this is an exception to the ordinary rule. . . . When, therefore, the record of the proceedings of the term at which the indictment was found does not show that it was presented in court, as provided by law, we think it should be presumed that the law in that respect was complied with, if, as in this case, the indictment appears to have been found and properly filed." (*State of Minnesota v. Beebe*, 17 Minn. 241, 245, Gil. 218.)

"When an indictment has been so returned, it is the duty of the clerk to record the facts upon the journal of the court. Such recitals upon the record are conclusive as to what was done in the premises; but, if an indictment was in fact returned into court, as required by law, the omission of the clerk to record the facts would not invalidate the work of the grand jury, nor defeat the jurisdiction of the court. The facts that the indictment was on file in the clerk's office, and duly recorded in the indictment record, furnish sufficient memorandum upon which the court on proper application, and in the absence of a showing to the contrary, could order a *nunc pro tunc* entry supplying the omission in the record." (*Shivers v. Territory*, 13 Okla. 466, 74 Pac. 899.)

The question was raised in the district court by a motion to quash the indictment for the reason that it ''was not presented by the foreman of the grand jury, in their presence, to the court, as required by law.'' This motion was, in effect, a plea in abatement, and required to be supported by evidence. (Gen. Stat. 1901, § 5604.) None having been offered, the presumption arising from the indorsement and filing was not overcome, and the motion was properly denied.

The indictment was signed, ''C. D. Ashley, assistant attorney-general for Cherokee county, Kansas.'' It is objected by the appellant that the only provision of the law for assistants to the attorney-general is found in section 2476 of the General Statutes of 1901; that an officer appointed under that statute has no authority to sign an indictment; and that, as the indictment was not signed by the county attorney, the court acquired no jurisdiction to try the defendant. The part of that section here involved reads:

''And whenever the county attorney shall be unable or shall neglect or refuse to enforce the provisions of this act in his county, or for any reason whatever the provisions of this act (the prohibitory liquor law) shall not be enforced in any county, it shall be the duty of the attorney-general to enforce the same in such county, and for that purpose he may appoint as many assistants as he shall see fit, and he and his assistants shall be authorized to sign, verify and file all such complaints, informations, petitions and papers as the county attorney is authorized to sign, verify, or file, and to do and perform any act that the county attorney might lawfully do or perform.''

It is obvious that if the language quoted is to be construed literally abundant authority is conferred for the signing of an indictment by the assistant attorney-general, since he is, in terms, empowered to

The State v. Crilly.

"sign . . . all such . . . papers as the county attorney is authorized to sign, . . . and to do . . . any act that the county attorney might lawfully do." But it is argued that these words of general import are limited by the special terms by which they are preceded, and give authority only for the performance of other acts of the same general nature as those already expressly enumerated. Granting that this is true, the appellant's case is not helped. The signing of an indictment is an act of the same general character as the signing of an information. An indictment, like an information, is the first pleading in a criminal action. The signature to each by the prosecuting officer serves the same purpose, and authority to sign other papers of the same general character as an information, and to do other acts of like nature, includes authority to sign an indictment.

It is further urged that, from the context, it is apparent that no authority was intended to be granted by the language quoted to the appointee of the attorney-general to act in the place of the county attorney in any matter other than the prosecution of offenders against the law forbidding the sale of intoxicating liquors (which may also be conceded), and that consequently it has no application to such proceedings as the present one, because a county attorney cannot prosecute by indictment, but only by information or complaint. But the county attorney can cause witnesses to be subpœnaed before the grand jury, there interrogate them himself, and give the jury any other information he may have. (Crim. code, §§ 83 and 84; Gen. Stat. 1991, §§ 5525, 5526.) Therefore, he can institute a prosecution in this manner as well as by the other methods provided by statute. These same powers are given to the attorney-general and his

assistants, so far as they concern offenses against the prohibitory law ; and the signing of an indictment charging the unlawful sale of intoxicating liquor is a step taken in the enforcement of that law. To clothe the assistant attorney-general with authority to perform his duty in any case where there might be occasion for his services in that connection is apparently one of the very purposes for which the statute was enacted.

An application was made for a change of venue on account of the prejudice of the trial judge against the defendant. Nothing of a material nature was offered in support of it except affidavits stating that, after the arrest of the defendant and before his trial, while the court was in session and the matter of giving bail was under consideration, the judge said to this defendant and other defendants who had been arrested upon the same charge, in substance :

"I want to say to you, as I have said to the other defendants who have been before me on these same charges, that it has come to me that the joint-keepers have said that they will, if convicted, lie in jail at the expense of the county while their bartenders continue their illegal business ; and I want to say to you now, that if you go back and continue your illegal business as you have been doing, I shall see that every one of your bars and fixtures, even down to the smallest cup, shall be seized and publicly destroyed. You shall not be permitted to continue in your open violation of the law in contempt of this court and its process."

Assuming that it was established that the judge used this language, it does not follow that it was error to deny the application. The defendant complains of it as showing a belief in his guilt. It is open to that construction, but this consideration is not controlling, if important.

''The belief or disbelief of a trial judge in the guilt of a defendant put upon trial before him is not a test of his qualification to preside at such trial. A trial judge may be convinced from his personal knowledge of the case, or what he has heard from others, of the guilt of one put upon trial before him, and yet with the utmost fairness and impartiality conduct the trial and give the defendant a fair and impartial hearing. It is the existence of prejudice or bias in the mind of the trial court against defendant which must be clearly shown in support of an application for a change of venue from the court presided over by such judge, not the belief of the judge in the guilt of defendant. (*The State v. Morrison*, 67 Kan. 144, 72 Pac. 554.)

A full exposition of the circumstances occasioning the remarks objected to might affect the inference to be drawn from them, as to the attitude of the judge toward the defendant; but, even in the absence of explanation, it is apparent that what the judge said with regard to his action to be taken in the future was based upon the contingency that the defendants, in the event of their conviction, should seek to evade the effect of the judgment of the court by the artifice described. It indicates no personal bias against this defendant, but a purpose that the efficacy of any sentence that might he pronounced should not be defeated by subterfuge; at least, it does not so clearly show a prejudice as to require a reversal. (*The State v. Stark*, 63 Kan. 529, 66 Pac. 243, 54 L. R. A. 910, 88 Am. St. Rep. 251; *City of Emporia v. Volmer*, 12 id. 622, 4 Encyc. Pl. & Pr. 408.)

It appears that no oath was administered to the bailiff who took charge of the jury, and this was urged as a ground for a new trial. It has been said that this is a substantial requirement of the statute which should not be disregarded. (*The State v. McCor-*

*mick,* 57 Kan. 440, 46 Pac. 777, 57 Am. St. Rep. 341.) But here the prosecution contends that the error was waived by the failure of the defendant to make timely objection.   In *The State v. Baldwin,* 36 Kan. 1, 12 Pac. 318, it was held that an irregularity in administering the oath to the jury could not be made a ground for a new trial unless the attention of the court was called to it at the time.   In the opinion it was said :

"If the form of the oath was defective the attention of the court should have been called to it at the time the oath was taken, so that it might have been corrected.   A party cannot sit silently by and take the chances of acquittal, and subsequently, when convicted, make objections to an irregularity in the form of the oath."

The same principle was applied where there was an omission to administer any oath to the bailiff upon his taking charge of the jury, in *Dreyer v. The People,* 188 Ill. 40, 58 L. R. A. 869, 53 N. W. 620, 59 N. E. 424, the reporter's head-note reading :

"The requirement of the statute that the jury in a criminal case shall be placed in charge of a *sworn* officer upon retirement is waived by the failure of the accused to object at the time to the omission of the oath, and the question is thereafter not open to review upon writ of error, although the point is urged as a ground for new trial by motion supported by affidavits."

In the opinion many decisions are cited supporting the conclusion reached.   In the present case the fact that the bailiff was not sworn was proved by several affidavits, including one made by the defendant's attorney, in which it was set out that the affiant was personally present at the time the cause was finally submitted and when the jury retired to deliberate upon their verdict, and knows the facts to be as

stated.    There was an affirmative showing by the
state that the conduct of the bailiff was in all respects
such as is enjoined by the statutory oath.    Whether
a new trial should ever be granted a defendant for a
failure to have the bailiff properly sworn, when no
exception is taken to the omission at the time it
occurs, need not now be determined.    Certainly
when, as in this case, there is an express showing
that the defendant's attorney was present and cogni-
zant of what was taking place, his silence must be
taken as an effectual waiver of the irregularity, where
no actual prejudice resulted.

The last assignment of error which invites separate
notice is based upon a claim that the court was not
legally in session when the defendant was tried, con-
victed, and sentenced, in December, 1903.    The stat-
ute (Laws 1901, ch. 156; Gen. Stat. 1901, § 1949)
provides for holding terms of the district court at
Columbus on the first Mondays in January, May, and
October, and at Galena, in the same county, on the
first Mondays in March and September and the sec-
ond Wednesday in November, of each year; that "all
actions commenced in said court shall be entitled in
said court 'sitting at Columbus,' or 'sitting at Ga-
lena' (as the case may be), and all actions shall be
filed, process issued from, and returned to, and trial
had in, the court sitting in the place designated in
the title."    Defendant was indicted at Columbus on
October 13, 1903.    Before his trial there was a regu-
lar term of court at Galena.    The contention of de-
fendant is that the court sitting at Columbus had no
power to continue the October term to a day beyond
the ensuing November term at Galena.    Where a judi-
cial district is made up of several counties the term of
court in one county may be adjourned to a day beyond

the commencement of a regular term in another county. (*The State v. Montgomery*, 8 Kan. 351.) The reasoning by which that conclusion was reached in the case cited is equally applicable here, and justifies the prolongation of the Columbus term to a day beyond the commencement of the regular Galena term. Defendant relies upon the following statement, made at page 733 of volume 11 of the Cyclopedia of Law and Procedure, upon the authority of *Jaques v. Bridgeport Horse-railroad Company*, 43 Conn. 32 :

"A court having regular terms and in which all cases are continued from one term to another in regular succession has no power to adjourn to a time beyond the commencement of another regular term of the same court in the same county, where both terms are of the same character."

That is not the situation here. The cases filed at Galena which remain untried at the expiration of a term there are not continued to the term at Columbus. The terms are not of the same character, as the expression is used in the case cited. One is held for the trial of cases begun at Columbus, the other for the trial of cases begun at Galena. The language quoted, by the clearest implication, suggests that under these circumstances the term at either place may, by proper order, be kept alive until the ensuing regular term at the same place, notwithstanding the intervention of a regular term at the other.

Other errors are assigned, but they involve no doubtful questions of law and require no discussion.

The judgment is affirmed.

All the Justices concurring.