No. 53,710

STATE OF KANSAS, *Appellee.* v. KENNETH W. DEDMAN, *Appellant.*

(640 P.2d 1266)

Opinion filed February 27, 1982.

*David Michael Rapp,* of Moore, Rapp & Schodorf, of Wichita, argued the cause and was on the brief for the appellant.

*Jack Peggs,* assistant district attorney, argued the cause and *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: Kenneth W. Dedman appeals from his jury conviction of the crime of rape (K.S.A. 21-3502).

The victim, a middle-aged widow, had established a "second mother" relationship with the appellant, Kenneth Dedman. She knew him through her daughter and the appellant's ex-wife. Appellant visited the victim's home on several occasions, sometimes claiming he had been beaten and kicked out of his home.

During the early morning hours of February 20, 1981, the victim was at home alone watching television and doing her laundry when Dedman showed up at her door. He told her he had been kicked out of his dad's house, and asked if he could come in. He asked for coffee, but she had none made.

Shortly thereafter, as the victim came from her bathroom where she was hanging laundry, the appellant grabbed her and stuck a knife in her ribs. He pushed her into the bedroom and forced her to have sexual relations with him. During the struggle appellant lost his knife. He dragged the victim into the kitchen where he got a pair of scissors out of a drawer and put them to her neck. The

appellant then took her back to the bedroom where he again raped her. Afterward, appellant handed her the scissors and told her to "do what you have to do" to him. She called the emergency phone number. Sheriff's officers came to the residence and placed the appellant under arrest. As a result of this ordeal the victim suffered scratches on her face and back, gouged eyes, cracked ribs, and contusions on both shoulders, her left arm and left thigh. A jury convicted appellant of rape. He appeals.

Appellant argues the trial court erred in failing to grant a new trial because the acting bailiff was not sworn before taking charge of the jury. Immediately following the closing arguments of counsel the bailiff, Roberta Ruse, was sworn. The jury then retired. Later that afternoon, the jury reached a verdict. During the jury's deliberations Ms. Ruse had to leave and Les Henry became acting bailiff. Mr. Henry was not sworn at the time he replaced Ms. Ruse. The court instructed the parties on the procedure to be followed in receiving the verdict and then directed the jury be returned to the box. At this point the following exchange took place:

"Acting Bailiff, Les Henry: You need to swear me in, Judge.
"The Court: Didn't you swear this guy? (Whereupon the bailiff's oath was administered to the acting bailiff, Les Henry, by the reporter.)
"The Court: Let the record show the bailiff was not sworn when he reported."

The jury was returned to the box and the verdict read. The court then asked for any objections to receiving the verdict and discharging the jurors. Defense counsel made none.

K.S.A. 22-3420(1) states:

"When the case is finally submitted to the jury, they shall retire for deliberation. They must be kept together in some convenient place under charge of a duly sworn officer until they agree upon a verdict, or be discharged by the court, subject to the discretion of the court to permit them to separate temporarily at night, and at their meals."

There are no cases construing the specific statute in question. The issue has, however, been dealt with in earlier cases interpreting prior statutes. In *State v. Crilly,* 69 Kan. 802, 77 Pac. 701 (1904), no oath was administered to the bailiff who took charge of the jury. The court stated the oath was "a substantial requirement of the statute which should not be disregarded." The court then discussed whether that error was waived by defendant's failure to timely object:

"In *The State v. Baldwin,* 36 Kan. 1, 12 Pac. 318, it was held that an irregularity in administering the oath to the jury could not be made a ground for a new trial unless the attention of the court was called to it at the time. In the opinion it was said:

" 'If the form of the oath was defective the attention of the court should have been called to it at the time the oath was taken, so that it might have been corrected. A party cannot sit silently by and take the chances of acquittal, and subsequently, when convicted, make objections to an irregularity in the form of the oath.'

"The same principle was applied where there was an omission to administer any oath to the bailiff upon his taking charge of the jury, in *Dreyer v. The People,* 188 Ill. 40, 58 L.R.A. 869, 53 N.W. 620, 59 N.E. 424, the reporter's head-note reading:

" 'The requirement of the statute that the jury in a criminal case shall be placed in charge of a *sworn* officer upon retirement is waived by the failure of the accused to object at the time to the omission of the oath, and the question is thereafter not open to review upon writ of error, although the point is urged as a ground for new trial by motion supported by affidavits.'

"In the opinion many decisions are cited supporting the conclusion reached. In the present case the fact that the bailiff was not sworn was proved by several affidavits, including one made by the defendant's attorney, in which it was set out that the affiant was personally present at the time the cause was finally submitted and when the jury retired to deliberate upon their verdict, and knows the facts to be as stated. There was an affirmative showing by the state that the conduct of the bailiff was in all respects such as is enjoined by the statutory oath. Whether a new trial should ever be granted a defendant for a failure to have the bailiff properly sworn, when no exception is taken to the omission at the time it occurs, need not now be determined. Certainly when as in this case, there is an express showing that the defendant's attorney was present and cognizant of what was taking place, his silence must be taken as an effectual waiver of the irregularity, where no actual prejudice resulted." *State v. Crilly,* 69 Kan. at 809-10.

More recently, in *State v. Palmer,* 173 Kan. 560, 251 P.2d 225 (1952), this court held it was error for the trial court to fail to have the bailiff sworn. Unlike the *Crilly* case, in *Palmer* the defendant's attorney was not in the courtroom when the jury was sent out to consider the case. Further, in *Palmer* there was evidence of bailiff misconduct.

Appellant argues since neither he nor his attorney were present when the acting bailiff took charge there was no waiver. He claims an objection when counsel became aware of the omission would have been pointless since the jury had already reached its verdict. This claim is without merit. Appellant became aware of the error before the verdict was returned. The *Crilly* case controls. We hold appellant waived any objection he had and failed to show prejudice.

For his next issue appellant contends the trial court erred in holding it lacked jurisdiction to modify his sentence after notice of appeal was filed. On September 25, 1981, appellant filed his notice of appeal from the "Judgment, Order and Sentence of the Court." That notice was filed with the Clerk of the Appellate Courts on October 2, 1981. On October 5, 1981, appellant filed a motion for an order modifying his sentence. The motion was set for hearing October 20, 1981. At that time the trial court declined to hear the motion because it was "without jurisdiction . . . for the reason that defendant has chosen to appeal his conviction and said appeal has been docketed in the Supreme Court." Appellant claims this constituted error.

The statutory authority relied upon by appellant to support his position is K.S.A. 1980 Supp. 21-4603(2). It provides in part:

"Any time within one hundred twenty (120) days after a sentence is imposed or within one hundred twenty (120) days after probation has been revoked, the court may modify such sentence or revocation of probation by directing that a less severe penalty be imposed in lieu of that originally adjudged within statutory limits. If an appeal is taken and determined adversely to the defendant, such sentence may be modified within one hundred twenty (120) days after the receipt by the clerk of the district court of the mandate from the supreme court or court of appeals."

The statute was amended by the 1981 legislature. The above language, however, was not changed. K.S.A. 22-3608(1), in turn, states:

"If sentence is imposed, the defendant may appeal from the judgment of the district court not later than ten days after the expiration of the district court's power to modify the sentence. The power to revoke or modify the conditions of probation shall not be deemed power to modify the sentence."

Normally, then, the appellant would have 130 days in which to file his notice of appeal. See *State v. Moses,* 227 Kan. 400, 404, 607 P.2d 477 (1980).

The question here is whether that 120-day period given the trial court to modify a sentence is suspended when the defendant appeals from the sentence. K.S.A. 1980 Supp. 21-4603(2) contemplates appeals within the 120-day period. The authorities support the position that when an appeal is docketed the trial court's jurisdiction ends and the sentence may then be modified only after the mandate from the Supreme Court or Court of Appeals is returned or by motion to remand temporarily for

modification of the sentence. 24 C.J.S., Criminal Law § 1587 states:

"As a general rule, an application to change or modify a sentence cannot be entertained by the sentencing court during the pendency of an appeal from the judgment and sentence. However, this rule does not preclude the sentencing court from vacating a judgment which is void on the face of the record and resentencing accused. Aside from this, while an appeal is pending, it has been declared that if the trial court desires to change the sentence, it may indicate that desire by a certificate to the appellate court to have the appellate court, on an appropriate showing made to it, remand the proceedings to the trial court for the purpose of having the sentence changed and then returned to the appellate court." pp. 588-89.

It is important to note that here the sentence itself was appealed from. Its correctness is thus before this court. The foregoing rule allows the sentence to become crystallized so it may, indeed, be subject to appellate review or modification. In addition, we deem it better policy to have jurisdiction of a criminal action repose in only one court at a time to prevent a case from getting lost in the system. The issue is without merit.

Finally, appellant argues it was error for the trial court to refuse to require the rape victim to submit to a polygraph examination. Appellant cites no legal authority for this final claim. He argues he was unable to properly investigate the case without a polygraph examination of the victim. He compares this potential evidence to tangible evidence such as documents, firearms, etc.

First, it appears the result of the polygraph test would have been inadmissible into evidence. Unlike in *State v. Roach,* 223 Kan. 732, 736-37, 576 P.2d 1082 (1978), here there was no agreement. Absent its evidentiary use, it is difficult to see how the results of the examination could help in the preparation of the appellant's case.

Further, such an order would involve a serious separation of powers question. "Generally speaking . . . the executive power is the power to enforce the laws, and the judicial power is the power to interpret and apply the laws in actual controversies." *Van Sickle v. Shanahan,* 212 Kan. 426, Syl. ¶ 8, 511 P.2d 223 (1973). The prosecuting attorney is a member of the executive, not judicial, branch of government. Although the Kansas Constitution contains no express provision requiring the separation of powers, "separation is accomplished by the establishment of the three branches of government and the distribution of the various sovereign powers to each of them." 212 Kan. at 440. Allowing

judicial oversight of what is essentially a function of the prosecutor's office would erode that power.

This same decision was reached recently by the Colorado Supreme Court in *People v. Dist. Ct. In And For Tenth, Etc.,* _____ Colo. _____, 632 P.2d 1022 (1981). There the district judge had ordered the district attorney to subject the victim of the crime to a polygraph examination. The court stated:

"The district attorney belongs to the executive branch of the government. *People v. District Court,* 186 Colo. 335, 527 P.2d 50 (1974). As an executive officer charged with the duty to prosecute persons for violations of the criminal laws, he has a broad discretion in the performance of his duties. See *1 ABA Standards for Criminal Justice, The Prosecution Function,* 3-3.9 (2d Ed. 1980). The scope of this discretion extends to the power to investigate and to determine who shall be prosecuted and what crimes shall be charged. . . .

"The district attorney's broad discretion in determining whether a charge shall be filed involves the primary determination of whether the evidence of the crime is sufficient to warrant the filing of the charge. This obviously depends upon his evaluation of the reliability and credibility of the witnesses to the crime, including the complaining witness or victim of the crime. Whether this evidence shall be tested by ordinary means of interrogation or by other means, such as requiring a potential witness to submit to a polygraph examination, is a matter of prosecutorial discretion. This function is not subject to judicial control or direction. . . .

"It is clear from the record before us that the district attorney, in evaluating the reliability and credibility of the key witness, did not believe it necessary to subject the witness of the alleged burglary to a polygraph examination in preparation of the People's case. For the court to order the district attorney to do so for the benefit of the defense, in our view, amounts to an impermissible judicial intrusion into the prosecutor's function." _____ Colo. at _____, 632 P.2d at 1024.

The judgment of the trial court is affirmed.