NOT DESIGNATED FOR PUBLICATION

No. 117,289

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PAUL STOTTS,
*Appellee*,

v.

STATE OF KANSAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed November 21, 2018.
Affirmed.

*Daniel Gilligan*, senior assistant district attorney, *John M. Settle*, senior assistant district attorney,
*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellee.

Before GARDNER, P.J., GREEN and HILL, JJ.

PER CURIAM: After being convicted of attempted second-degree murder and other
person felonies, Paul Stotts filed a K.S.A. 60-1507 motion claiming his trial counsel was
constitutionally ineffective. The district court agreed that his counsel was ineffective for
having failed to inform Stotts of the State's plea offer in 2008 of 161 months, "an offer
that might reasonably have been accepted by Stotts." Instead, Stotts was tried, convicted,
and sentenced to 292 months. But on appeal, we reversed, finding no prejudice had been
shown. Stotts then filed another 60-1507 motion—this one alleged that counsel who
represented him during his first 60-1507 motion was ineffective for not having

1

established prejudice. Stotts won that motion as well. The State now appeals from the district court's grant of Stotts' second 60-1507 motion, which found his first 60-1507 counsel ineffective for not establishing prejudice. Finding no reversible error, we affirm.

*Factual and procedural background*

In 2008, Stotts was convicted by a jury of three person felonies, including attempted second-degree murder, multiple drug offenses, and five counts of fleeing and eluding police officers. The charges stemmed from a 2007 incident in which Stotts led police officers on an extended chase that ended when Stotts' car veered into oncoming traffic, struck a car head on, and critically injured the driver. *State v. Stotts*, No. 101,828, 2011 WL 6382737 (Kan. App. 2011) (unpublished opinion). We find it unnecessary to set out the facts underlying Stotts' conviction.

Stotts was ultimately sentenced to 292 months' imprisonment. He filed and lost a direct appeal before filing two K.S.A. 60-1507 motions, the second of which is the subject of this appeal. We summarize these motions below.

*The first 60-1507 motion*

Stotts' first K.S.A. 60-1507 motion challenged the effectiveness of his trial counsel, David Holmes. Shawn Lautz represented Stotts in that motion. The district court found that Holmes was ineffective for having failed to inform Stotts of the State's plea offer in 2008 of 161 months, "an offer that might reasonably have been accepted by Stotts." The district court granted relief, necessarily finding that Lautz had proved both deficient performance by Holmes and prejudice from Holmes' failure to tell Stotts about the plea offer. The district court ordered the State to reoffer to Stotts the plea which Holmes had not conveyed to Stotts.

The State appealed and we reversed, finding that the district court's conclusion of prejudice was not supported by substantial competent evidence. Because of the importance of that ruling, we set out its relevant portions here. In reviewing the finding of deficient performance of Stotts' trial counsel, the panel stated:

> "In the present case, the district court found that Holmes did not communicate the State's offer to Stotts after hearing the evidence presented at the K.S.A. 60-1507 hearing. A review of the record reveals that Stotts testified that Holmes did not inform him about the plea offer. Furthermore, Stanton was obviously concerned that Holmes had failed to tell Stotts about the plea offer because he felt the need to put it on the record at the June 26, 2008, hearing. Although we may not have reached the same conclusion as the district court on this question, we conclude that this finding is supported by substantial evidence." *Stotts v. State*, No. 110,800, 2015 WL 1402815, at *7 (Kan. App. 2015) (unpublished opinion).

The panel then asked, under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), what, if any, prejudice resulted from Holmes' deficient performance.

> "'To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, *defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer* had they been afforded effective assistance of counsel. *Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it,* if they had the authority to exercise that discretion under state law.' (Emphasis added.) [*Missouri v.*] *Frye*, [566 U.S. 134, 147,] 132 S. Ct. 1399[, 182 L. Ed. 2d 379 (2012)].

> "Here, even if it is assumed that Stotts demonstrated a reasonable probability that the plea offer made in June 2008 would not have been withdrawn by the State and would have been accepted by the district court, we do not find substantial competent evidence that Stotts has demonstrated a reasonable probability that he would have accepted the

3

plea offer at the time it was offered. A review of the record reveals that neither Stotts nor any of his witnesses testified that in June 2008, he would have—or probably would have—accepted a plea offer of 161 months in prison. At most, the evidence in the record suggests that he may have accepted a plea offer around 10 years or 120 months. Certainly, a difference of 41 months—or approximately 3½ years is significant.

"We recognize that the sentence of 292 months Stotts ultimately received following his jury trial was considerably more than the 161 months he may have received had he accepted the plea offer. But under *Lafler* and *Frye*, it is the defendant's burden to 'demonstrate a reasonable probability' that he would have accepted the plea offer at the time that it was made—not after he knew the outcome of his trial and direct appeal. *Lafler* [*v. Cooper*, 566 U.S. 156, 163,] 132 S. Ct. 1376[, 182 L. Ed. 2d 398 (2012)]; *Frye*, [566 U.S. at 147]. Because Stotts has failed to demonstrate a reasonable probability that he would have accepted a plea offer of 161 months in June 2008, we conclude that he has failed—as a matter of law—to establish prejudice resulting from the ineffectiveness of his trial counsel." *Stotts*, 2015 WL 1402815 at *7-8.

Because Stotts had not shown prejudice, the panel reversed the finding that Holmes had given Stotts ineffective assistance as trial counsel.

*The second 60-1507 motion*

Stotts then filed a second K.S.A. 60-1507 motion, raising a new theory. Michael Whalen represented Stotts in this motion, as he does on appeal. This motion alleged that Shawn Lautz, counsel during Stotts' first 60-1507 proceeding, was constitutionally ineffective for failing to ask Stotts during the hearing on that motion whether Stotts would have accepted a plea for 161 months in 2008 if Holmes had told him about it. Stotts contends that his affirmative answer to this one crucial, unasked question would have established the prejudice we found lacking on appeal.

4

The district court held an evidentiary hearing on Stotts' second 60-1507 motion. During that hearing, Stotts testified that he would have accepted a plea offer of 161 months reduced by 15% good time credit. The district court concluded that Stotts had demonstrated a reasonable probability that he would have accepted the plea offer of 161 months at the time it was made, and that his first 60-1507 counsel was deficient in not having asked Stotts that question. Accordingly, the district court granted Stotts' second 60-1507 motion and ordered the State to reoffer the plea of 161 months that trial counsel Holmes had not conveyed to Stotts.

The State appeals that decision, alleging error on three bases which we discuss below.

*Stotts has a statutory right to effective assistance of counsel.*

We begin by addressing the scope of Stotts' right to effective assistance of counsel in his first 60-1507 proceeding.

> "There is no constitutional right to effective assistance of counsel in an action pursuant to K.S.A. 60-1507. However, there is a conditional right to counsel protected by statute. Once this statutory right to counsel attaches, a movant is entitled to effective assistance of counsel. Appointment of counsel in a K.S.A. 60-1507 proceeding should not be a useless formality. [Citations omitted.]" *Robertson v. State*, 288 Kan. 217, 228, 201 P.3d 691 (2009).

The district court appointed counsel to represent Stotts during his first 60-1507 proceeding; thus, he was entitled to the effective assistance of that counsel. We measure an alleged violation of that statutory right using the same standard for inadequate legal representation under the Sixth Amendment to the United States Constitution. See *Robertson*, 288 Kan. at 228-32.

5

*Our review of an ineffective assistance of counsel claim is highly deferential.*

To succeed on a claim of ineffective assistance of counsel, a 60-1507 movant must show two elements: (1) that counsel's representation fell below a level of reasonable competence; and (2) but for counsel's deficient performance, a reasonable probability exists that the result would have been different. *Chamberlain v. State*, 236 Kan. 650, Syl. ¶¶ 3-4, 694 P.2d 468 (1985) (adopting *Strickland* test for ineffective assistance). The movant must prove deficient performance and prejudice by a preponderance of the evidence. Kansas Supreme Court Rule 183(g) (2018 Kan. S. Ct. R. 223). Judicial scrutiny of an attorney's performance must be highly deferential, and we apply a strong presumption that the attorney's conduct falls within a wide range of reasonable professional assistance. *Moncla v. State*, 285 Kan. 826, 832, 176 P.3d 954 (2008). The defendant bears the burden of demonstrating that trial counsel's alleged deficiencies were not the result of strategy. *State v. Gleason*, 277 Kan. 624, 644, 88 P.3d 218 (2004).

The test has nothing to do with what the best lawyers or what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted. The issue is not what is possible or "what is prudent or appropriate, but only what is constitutionally compelled." *United States v. Cronic*, 466 U.S. 648, 665 n.38, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). So we are not interested in grading lawyers' performances—we are interested in whether the adversarial process at trial worked adequately.

Here, we are dealing not with a trial, but with a plea bargain. Nonetheless, that posture highlights the importance of competent performance by counsel:

> "The reality is that plea bargains have become so central to the administration of the criminal
> justice system that defense counsel have responsibilities in the plea bargain process,
> responsibilities that must be met to render the adequate assistance of counsel that the Sixth

Amendment requires in the criminal process at critical stages. Because ours 'is for the most part a system of pleas, not a system of trials,' *Lafler*, *post*, at 170, it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process. 'To a large extent . . . horse trading [between prosecutor and defense counsel] determines who goes to jail and for how long. That is what plea bargaining is. It is not some adjunct to the criminal justice system; it *is* the criminal justice system.' Scott & Stuntz, Plea Bargaining as Contract, 101 Yale L. J. 1909, 1912 (1992)." *Frye*, 566 U.S. at 143-44.

*The district court properly denied the State's motion to dismiss the second 60-1507 motion as successive.*

With that background, we are ready to address the State's argument that the district court should have granted its motion to dismiss Stotts' second 60-1507 motion as successive. The State relies on Kansas Supreme Court Rule 183(d). That rule bars considerations of subsequent 60-1507 motions if "(1) the ground for relief was determined adversely to the movant on a prior motion; (2) the prior determination was on the merits; and (3) justice would not be served by reaching the merits of the subsequent motion." (2018 Kan. S. Ct. R. 225). The State argues that both 60-1507 motions involve the "exact same facts and circumstances" and that this court determined the issue of prejudice adversely to Stotts, on the merits, in its decision on Stotts' first 60-1507 motion.

*Standard of review*

This issue requires interpretation of K.S.A. 2017 Supp. 60-1507 and related Kansas Supreme Court Rules. Interpretation of a statute is a question of law over which we have unlimited review. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

7

*Discussion*

The State's assertion that both 60-1507 motions involve the same facts and circumstances is not correct. The first motion challenged Holmes' effectiveness during pretrial plea negotiations, alleging he was deficient for not conveying the plea offer to Stotts. The second motion challenges Lautz' effectiveness at the hearing on the first 60-1507 motion, alleging he was ineffective by not asking Stotts if he would have taken the plea had Holmes told him about it. We do not consider these two motions, which relate to different acts by different counsel at different stages of the legal proceedings, to present the same ground for relief merely because they share some underlying facts.

Stotts could not have raised his claim about Lautz' alleged ineffectiveness in his first 60-1507 motion, unlike the movant in *Woodberry v. State*, 33 Kan. App. 2d 171, 174-75, 101 P.3d 727 (2004). And, as the State concedes, new evidence was presented in support of Stotts' second 60-1507 motion—testimony that Stotts would have accepted the plea offer in 2008 had Holmes told him about it. Thus, justice would be served by reaching the merits of Stotts' second motion.

Further, a convicted criminal defendant may bring a second or successive 60-1507 motion in exceptional circumstances. Those circumstances include inadequate legal representation in an earlier 60-1507 motion, such as Stotts alleges here. See 33 Kan. App. 2d at 174-75; *Rojas v. State*, No. 113,095, 2016 WL 765414 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan 1320 (2017).

For these reasons, we agree with the district court that Stotts' second 60-1507 motion was not successive.

*The trial court did not err in finding ineffective assistance by counsel during Stotts' first 60-1507 hearing.*

The State next contends that the district court erred in finding Lautz ineffective for failing to establish during the first 60-1507 hearing that Stotts had been prejudiced by the deficient performance of trial counsel Holmes. Lautz did not ask Stotts during his first 60-1507 hearing whether he would have taken the 161-month plea that Holmes failed to tell him about, had Holmes conveyed that offer to him. An affirmative answer to that question was necessary, although not sufficient, to establish the prejudice that we found lacking in Stotts' previous appeal. See *Stotts*, 2015 WL 1402815, at *7-8.

*Standard of review*

Claims involving ineffective assistance of counsel present mixed questions of fact and law. *State v. Cheatham*, 296 Kan. 417, 430, 292 P.3d 318 (2013). In appeals after an evidentiary hearing, we review the district court's factual findings to determine if they are supported by substantial evidence, and we review its legal conclusions from those facts under a de novo standard. 296 Kan. at 430.

Substantial evidence is evidence that possesses both relevance and substance. *Ludlow v. State*, 37 Kan. App. 2d 676, 687, 157 P.3d 631 (2007). Appellate courts do not reweigh evidence, assess witnesses' credibility, or resolve conflicts in evidence. Instead, we must accept as true the inferences that support the district court's findings of fact. *State v. Orr*, 262 Kan. 312, 322, 940 P.2d 42 (1997). We apply this standard to the district court's findings of counsel's performance and the client's prejudice. See *Strickland*, 466 U.S. at 687.

*Lautz' performance at the first hearing*

We first address the parties' arguments on the performance prong. The State contends that Lautz' failure to ask one question does not show deficient performance. The district court disagreed, finding that Lautz' performance was deficient: "Effective habeas counsel would have demonstrated prejudice to Stotts by the failure of trial counsel to convey the plea offer."

Stotts counters that this issue is being raised for the first time on appeal, as the State never argued below that Lautz' failure to ask Stotts if he would have taken the plea in 2008 was reasonable and competent. Instead, the State argued only that Stotts' answer—that he would have taken the plea of 161 months had his attorney told him about it—was not credible.

Having reviewed the record, we agree with Stotts. At the hearing on Stotts' second 60-1507 motion, Whalen argued that Lautz' performance at the first 60-1507 hearing was deficient because he failed to ask Stotts the "one question" necessary to establish prejudice from Holmes' performance—whether Stotts would have accepted the plea offer of 161 months at the time it was made, had he known about it. He also argued at length that this failure prejudiced Stotts.

But the State's only response to Whalen's two-fold argument was that Stotts had failed to meet his burden to show prejudice. The State argued, "[T]his hearing today and the determination as to whether or not Mr. Stotts has demonstrated that he was prejudiced by the ineffective assistance of Mr. Holmes during his trial is based in total on all of the facts and  circumstances that surrounded the hearing of June 26, 2008, and the period of time between then and the trial of the case." It concluded, "[C]onsidering all of those things the State would urge the Court to find that the defendant has failed to meet his burden to show he was prejudiced in any way by the lack of accepting the plea agreement

10

or the plea offer that was made by [the State] in June of 2008." The State did not argue or try to show that Lautz' acts were reasonable, strategic, or otherwise not deficient.

Now the State contends that Whalen failed to show Lautz' performance was deficient. But as a general rule, an issue not raised before the district court cannot be raised for the first time on appeal. See Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 34). The State does not explain why it should be permitted to raise this issue for the first time on appeal, as required to fall within an exception to that rule. See *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015) (strictly enforcing Supreme Court Rule 6.02[a][5]). We thus apply the general rule and do not reach the merits of the State's late argument that Lautz acted reasonably and competently in not asking Stotts the crucial question.

The State could have argued to the district court that Lautz acted reasonably, noting, as it does on appeal, that Lautz called nine witnesses at the first 60-1507 hearing, that Lautz specifically asked Stotts "about plea offers," that Lautz enjoyed a strong presumption that his act was due to strategy and not to deficient performance, and that Stotts failed to rebut that presumption because Lautz was not called to testify at the second hearing. Similarly, the State could have put on testimony that due to strictures of ethical rules Lautz intentionally avoided asking Stotts whether he would have accepted the plea offer of 161 months.

But the State did not. Even though the State had subpoenaed Lautz and he was apparently present at the evidentiary hearing on Stotts' second 60-1507 motion, the State did not call Lautz to testify. Neither did Stotts. Thus, no evidence explains this crucial omission. A defendant bears the heavy burden of demonstrating that trial counsel's alleged deficiencies were not the result of strategy. *Gleason*, 277 Kan. at 644; *Ferguson v. State*, 276 Kan. 428, 446, 78 P.3d 40 (2003). So when the record is silent on the motivations underlying counsel's tactical decisions, the appellant usually cannot

11

overcome the strong presumption that counsel's conduct was reasonable. See *Winters v. State*, 303 Ga. 127, 130, 810 S.E.2d 496 (2018) (The burden to overcome the presumption is "extremely difficult" to meet where trial counsel did not testify at the motion for new trial hearing.); *Syed v. State*, 236 Md. App. 183, 304-05, 181 A.3d 860 (2018). Because of the strength of the presumption that Lautz' conduct was reasonable, we may have agreed with the State had we reached the merits of this argument.

But in accordance with the Supreme Court's strict enforcement of its rules, we do not reach the issue whether Lautz' performance was, in fact, deficient. Whalen argued that it was deficient, the State did not dispute that, and the district court found that it was deficient.

*Prejudice*

We now turn to the second prong of the *Strickland* test and consider whether Stotts was prejudiced by Lautz' performance. The State contends only that Stotts' answer to the question whether he would have taken the plea was equivocal, failing to show prejudice.

*Prejudice resulting from Lautz' performance at the first hearing*

To establish prejudice from trial counsel Holmes' failure to communicate the plea offer to Stotts, Lautz needed to adduce evidence during the second 60-1507 hearing to show a reasonable probability that Stotts would have taken the plea offer at the time it was made—not after he knew the outcome of trial, sentencing, and direct appeal. See *Frye*, 566 U.S. at 147. It was thus necessary during Stotts' second 60-1507 motion for Whalen to adduce credible evidence as to prejudice.

The district court found:

- "Before trial counsel received the State's plea offer trial counsel had been told by Stotts that Stotts would accept a plea that resulted in approximately 10 years in prison."
- "A prison sentence of 161 months with the application of 15% good time results in a prison term of 11.4 years."
- "If Stotts had learned of a plea offer of 161 months he would have discussed the offer with his parents and would have considered the offer to be in the range of what he would accept."

Based on these findings, the district court concluded that Stotts had demonstrated a reasonable probability that he would have accepted the plea offer of 161 months at the time it was made.

These findings are supported by the record of the evidentiary hearings. Thomas Stanton, the prosecutor in the criminal case, testified at the first hearing that the State's offer involved running sentences concurrently and "would have resulted in a 161-month sentence." See *Stotts*, 2015 WL 1402815, at *5. During the second 60-1507 hearing, Whalen calculated the potential good time credits and asked:

"Q. So if you had taken the plea offer at [161] months, let me see if I can figure out the math. So [161] months multiplied by point 15, which is a 15 percent reduction for credit, which is a reduction of 24 point three months; does that sound—does that kind of fit with your understanding of what your good time would have been?

"A. If I would have taken the plea, yes, sir."

Good time credits are "prospective" in nature, earned by not having prison rule violations during a given period of time. *Hurry v. Shelton*, No. 98,993, 2008 WL 762524, at *3 (Kan. App. 2008) (unpublished opinion).

The State contends the following colloquy shows that Stotts' response to the hypothetical plea offer was equivocal:

> "Q. And if Mr. Holmes had come to you and said, I have a plea offer for 13-and-a-half years, [161] months and you get 15-percent good time on that; is that an offer you would have taken at that time?
>
> "A. Yes, sir.
>
> "Q. Now, at the last 1507 hearing Mr. Lautz was your attorney. Did he ever ask you, to your recollection, the question of whether or not you would have accepted that plea had it been offered to you at that time?
>
> "A. That question was never posed to me, no, sir.
>
> "Q. Okay. And again, if the offer had been made at that time, would you have taken it?
>
> "A. What I would have done, I would have taken it to my parents, talked it over with them and that was right in the range of what I was willing to take. I would have taken that plea, yes, sir."

When read in context, the phrase "the offer" relates back to the previous characterization of the offer as including good time credit resulting in a term of 137 months.

The State does not contend that Whalen misled Stotts by superimposing good time credits, which were not part of the plea offer, into his question about the length of the plea. See *State v. Ya*, No. 116,211, 2017 WL 5622838, at *4 (Kan. App. 2017) (unpublished opinion) ("if the State intended to recommend a sentence that included a 15% good time credit calculation, then the State had the burden to include it in the plea agreement"). Nor does the State contend that 137 months or 11.4 years is not in the 10-year range Stotts had previously told Holmes he would accept.

Instead, the State contends only that Stotts did not unequivocally testify that he would have accepted the plea agreement because he said he would have talked to his parents about it and would have "considered" it. But the law does not require a defendant

14

in this posture to show anything but "a reasonable probability" he would have accepted the earlier plea offer had he been afforded effective assistance of counsel. *Frye*, 566 U.S. at 147; *Stotts*, 2015 WL 1402815, at *8.

Whether that test for prejudice was met here largely depends on whether the district court believed Stotts' testimony that he would have taken the unoffered plea of 161 months in 2008. When the district court took the matter under advisement, it expressly recognized that its credibility determination was crucial to the matter. It ultimately found in favor of Stotts, thus inherently finding his testimony to be credible. Because no conflicting testimony on this issue was presented, the district court's credibility decision was not whether Stotts' testimony was to be believed over that of another witness. Instead, that credibility decision was whether Stotts' testimony that he would have taken the plea in 2008 had been altered due to hindsight. The district court implicitly recognized that in cases such as this, the incentive is strong for defendants to testify in a way that could reduce the sentence imposed after trial. See *Schicke v. State*, No. 113,052, 2016 WL 1546433, at *6 (Kan. App. 2016) (unpublished opinion) (noting that defendant and his family had bias, motive, and interest in testifying regarding the non-accepted plea). Nonetheless, the district court chose to believe Stotts' testimony that he would have accepted the plea for 161 months in 2008 had Holmes told him about it.

We cannot reweigh Stotts' credibility. Substantial evidence supports the district court's finding that the evidence shows a reasonable probability that in 2008 Stotts would have accepted the uncommunicated plea.

The State also generally contends that Stotts' testimony that he would have accepted the uncommunicated plea fails to show the necessary prejudice. But we find no error in the district court's resulting legal conclusion that Stotts showed the requisite prejudice.

15

*Lafler*, 566 U.S. at 164, shows us how to specifically apply *Strickland*'s prejudice test when ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial:

> "In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."

The State does not contend that it would have withdrawn the plea offer made in June 2008 or that the district court would not have accepted it. And it is uncontested that the 2008 plea offer of 161 months is less severe than the 292 months that the district court imposed. Substantial evidence supports the district court's finding that it is reasonably probable that in 2008 Stotts would have accepted the plea, had his counsel advised him of it. Stotts has thus met the test for legal prejudice under these circumstances.

We thus affirm the district court's finding that Stotts received ineffective assistance of counsel during his first K.S.A. 60-1507 hearing.

*The district court did not violate the separation of powers doctrine by ordering the State to reoffer the plea.*

The State next argues that the district court lacked the authority to order the State to reoffer the uncommunicated plea because that remedy violates the separation of powers doctrine. We apply a de novo standard of review to this constitutional question. *State v. Kirtdoll*, 281 Kan. 1138, 1151, 136 P.3d 417 (2006).

16

*Discussion*

The State generally contends that the county or district attorney is the chief law enforcement official in his or her jurisdiction, that criminal proceedings are matters under their control, and that allowing judicial oversight of a prosecutor's function erodes that power. See *State v. Williamson*, 253 Kan. 163, 166, 853 P.2d 56 (1993); *State v. Dedman*, 230 Kan. 793, 797-98, 640 P.2d 1266 (1982); *Sampson v. Rumsey*, 1 Kan. App. 2d 191, 197, 563 P.2d 506 (1977). But the State fails to cite cases analyzing the separation of powers doctrine.

While there are no specific provisions in the Kansas or United States Constitutions pertaining to separation of powers, "such a doctrine has been implied in the creation of three separate branches of government." *Brull v. State*, 31 Kan. App. 2d 584, 588, 69 P.3d 201 (2003). "A violation of the separation of powers doctrine can result when legislation permits one branch of government to usurp or intrude into the powers of another branch of government." *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 880, 179 P.3d 366 (2008). But the Supreme Court in *Lafler* tacitly rejected the argument that requiring the government to reoffer a plea agreement after the defendant had received a fair trial violates the separation of powers doctrine. *United States v. Wolfe*, No. 2:11-CR-33, 2012 WL 1957427, at *14, n.27 (E.D. Tenn. 2012) (unpublished opinion).

We have recognized that it is impossible to always have an absolute separation of powers. *In re D.T.J.*, 37 Kan. App. 2d 15, 26, 148 P.3d 574 (2006). So we consider the degree of control and other factors in deciding the question:

> "In reviewing whether one branch of government has significantly interfered with the operations of another to the point of violating the doctrine of separation of powers, courts commonly consider four factors: (1) the essential nature of the power being exercised; (2) the degree of control by one branch over another; (3) the objective

17

sought to be attained; and (4) the practical result of blending powers as shown by actual experience over a period of time. *Miller v. Johnson*, 295 Kan. 636, 671, 289 P.3d 1098 (2012); *Sebelius*, 285 Kan. at 884; *Bennett*, 219 Kan. at 290-91." *Solomon v. State*, 303 Kan. 512, 526, 364 P.3d 536 (2015).

Curiously, the State makes no attempt to cite any test or to apply these or other factors under Kansas law regarding the separation of powers, thus pressing the point without pertinent authority. The State's failure to adequately brief this separation of powers argument renders it abandoned. See *State v. Angelo*, 306 Kan. 232, 236, 392 P.3d 556 (2017); *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015) (finding "sparse" briefing rendered issue abandoned).

But even had the State preserved this argument, it would have lost it. The district court cited *Lafler* as specific authority for imposing this unusual remedy. We agree that *Lafler* addresses the proper remedy where, as here, a petitioner is prejudiced by counsel's deficient performance in advising petitioner to reject a plea offer and go to trial.

"Sixth Amendment remedies should be 'tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.' *United States v. Morrison*, 449 U.S. 361, 364[, 101 S.Ct. 665, 66 L. Ed. 2d 564 (1981)]. Thus, a remedy must 'neutralize the taint' of a constitutional violation, *id.*, at 365, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution . . . .

"The specific injury suffered by defendants who decline a plea offer as a result of ineffective assistance of counsel and then receive a greater sentence as a result of trial can come in at least one of two forms. In some cases, the sole advantage a defendant would have received under the plea is a lesser sentence. This is typically the case when the charges that would have been admitted as part of the plea bargain are the same as the charges the defendant was convicted of after trial. In this situation the court may conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea. If the showing is made, the court may exercise discretion in determining whether the defendant should

18

receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between.

> "In some situations it may be that resentencing alone will not be full redress for the constitutional injury. If, for example, an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory sentence confines a judge's sentencing discretion after trial, a resentencing based on the conviction at trial may not suffice. See, *e.g.*, *Williams*, 571 F.3d, at 1088; *Riggs v. Fairman*, 399 F.3d 1179, 1181 (CA9 2005). In these circumstances, the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal. Once this has occurred, the judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed." *Lafler*, 566 U.S. at 170-71.

The district court thus had the authority or power to require the State to reoffer the plea proposal of 161 months.

The State does not argue that the district court abused its discretion in ordering this remedy instead of another. Thus we find no basis for reversal.

Affirmed.